## SHELDON *vs.* SMITH and MORGAN.

Where one of two partners in a firm doing business here is absent in a distant state, and thus unable to assist in the management of the business, and to assent to such transfers of its property as the exigencies of its affairs may demand, *it seems* that such absence, if it does not warrant the remaining partner in making an assignment of the partnership property, in trust, for the benefit of creditors, will authorize the presumption that he was duly empowered to make such an assignment as attorney for the absent partner, until the contrary appears.

And no one but the absent partner can question the validity of an assignment thus executed. It is not void *per se*, but only voidable at the election of the absent partner.

If, upon his return, the absent partner affirms and ratifies an assignment, executed during his absence by his partner, in his name and as his attorney,

such ratification will relate back to the time of the original execution of the instrument, and render the assignment valid and operative from that time.

Such assignment, being a complete and perfect deed immediately on its execution and delivery to the assignees, it is from that time entirely beyond the control of the resident partner, and he has no power to alter, amend or vary its terms or provisions.

Hence, he cannot vary its effect by making a note to a creditor, in the name of the partnership, after the execution of the assignment, and dating it back to a day prior to the execution of that instrument, for the purpose of having such note embraced in the schedule of debts preferred in the assignment.

THIS action was brought against the defendants, who are assignees of the copartnership firm of Stewart & Tunnicliff, to compel the payment out of the trust fund of a note of $634.84, which it is claimed is, by the terms of the assignment, directed to be paid as one of the debts in the first class. The defendants were the sureties and accommodation indorsers of Stewart & Tunnicliff to a very large amount. The assignment was made primarily to secure the defendants, and provide for the debts for which they stood bound as sureties. The assignment bears date on the 21st of October, 1850, and was executed on that day by Tunnicliff, under his hand and seal, and it was at the same time executed by him as attorney for Stewart, and under seal. At the time of the execution of the assignment Stewart was in California. He returned in January, 1851, and on the 10th day of that month acknowledged the assignment, as thus executed, before the county judge of Yates county. At the time of the execution of the assignment the plaintiff held two demands against Stewart & Tunnicliff: one was a note of $600, given in 1846, and on which the whole principal sum remained unpaid with about two years' interest, and which was signed by the defendant Smith as surety; the other debt was an open and unliquidated account, made up of items of cash and other matters of account, and balances due on one or two small notes, for which Stewart & Tunnicliff alone were liable. This debt, when settled and liquidated after the assignment, was found to amount to the sum of $634.84. The assignment,

by its terms, provides for the payment of " one note to Edgar Sheldon, about six hundred and thirty-four dollars and eighty-four cents,   *   *   *   ($634.84.)" It appeared that Tunnicliff furnished to the scrivener by whom the assignment was drawn a memorandum to guide him in the preparation of the assignment, which specified both debts due to the plaintiff as debts to be placed in the first class, and described them as follows:

" Note to Edgar Sheldon,   .   .   .   .   .   .   $634.84
Account      "      "      .   .   .   .   .   .   .   700.00"

After the assignment was executed by Tunnicliff, as before stated, and accepted by the defendants, the plaintiff discovered that the account due to him from Stewart & Tunnicliff had been, as he supposed by mistake, omitted in the class of preferred debts in the assignment, and on the 22d or 23d of October he induced Tunnicliff to make a note for the balance of the account in the name of the firm, and date it on the 16th of October, prior to the assignment, so as to bring the debt within the description given in the assignment.   All this was without the knowledge of the defendants.   It was clearly proved in the case, that the note described in the assignment as a note to Edgar Sheldon, was intended by all the parties to the assignment, and by Mr. Glover, by whom the assignment was drawn, to describe the note on which the defendant Smith was liable as surety.   The referee decided that the note of $634.84, made after the date of the assignment, was the note directed to be paid by the assignment, and he gave judgment for the plaintiff.   The referee put his decision upon the ground that the assignment was not complete until the acknowledgment by Stewart on the 10th of January, 1851, and that it must be regarded and treated as bearing date on that day.   That at that time this note was actually made, and was then a valid note of the firm.   And as the words of the assignment exactly describe this note, no evidence could be admitted to contradict or vary it.   The defendants appealed from the judgment entered upon this decision.

*B. W. Franklin*, for the appellants. I. The assignment took effect on the day of its date, and must be held to speak from that day. (1.) Tunnicliff might, as against every one but his copartner, make a valid assignment of the partnership effects for the payment of the partnership debts. The assignment was not void, as the referee seems to suppose. It was voidable only at the election of the copartner. (*Pierpont* v. *Graham*, 4 *Wash. Cir. Co. Rep.* 235.) (2.) The subsequent ratification by Stewart is equivalent to an original antecedent authority, and made the assignment operative from its date. This is so upon well settled principles. The acknowledgment by Stewart was a ratification of the act of Tunnicliff in making the assignment on the 21st of October, and not a new execution of it on the day of the acknowledgment. Stewart acknowledged that the instrument was his act and deed; that is, that the act of Tunnicliff in subscribing his name and affixing a seal thereto was his act, and that the deed thus created was his deed. This was not only the most solemn ratification known to the law, but it was equivalent to an original antecedent authority under seal. (*Lawrence* v. *Taylor*, 5 *Hill*, 107. *Green* v. *Seton*, 1 *Hall's S. C. Rep.* 270. *Mackay* v. *Bloodgood*, 9 *John.* 285. *Cady* v. *Shepherd*, 11 *Pick.* 400. *Story on Agency*, §§ 239–244.) (3.) But the assignment was good as to Tunnicliff; and for the purpose of this action that is all that it is necessary for the defendants to maintain. (*McBride* v. *Hagan*, 1 *Wend.* 326.) (4.) The plaintiff seeks to affirm the assignment, for he claims under it. He must, therefore, take it as it is; that is, as the act of Tunnicliff, intended to be complete on the 21st of October, and which, as to him at least, was in fact complete on that day. Stewart ratified it as an act performed for him by Tunnicliff, or his attorney, on that day. Stewart, after his solemn acknowledgment, would not be permitted to deny that the assignment was not complete on the day of its date; and as the plaintiff claims under him, he can claim nothing which Stewart could not. (5.) It is by no means clear that

Sheldon *v.* Smith.

Tunnicliff could not, under the circumstances, make a valid assignment of the partnership effects under his general authority as a copartner. Stewart was out of the country, and could not be consulted. Tunnicliff had a right to do whatever the exigencies of the partnership required to be done. (*Anderson* v. *Tompkins*, 1 *Brock. C. C. Rep.* 462.)

II. If then the assignment is to be regarded as an instrument made and executed on the 21st of October, 1850, there was no such note as the plaintiff claims to have paid out of the trust fund in existence on that day ; and there was nothing in the character or circumstances of this demand to which the descriptive words in the assignment could apply. The words, however, describe with sufficient certainty the note on which the defendant Smith was surety. They describe "one *note* to *Edgar Sheldon* for about $634.84." The description is certain and accurate, so far as it describes a note to the plaintiff. The only uncertainty or misdescription is the amount of the note, or the amount due upon it, and as to that the assignment itself does not profess to be certain. If Stewart & Tunnicliff had owed no other debt to the plaintiff, the description would have been held sufficient, without any doubt, to authorize the payment of this note; and when it is considered that the primary object of the assignment was to indemnify the defendants in this action, as the sureties of the assignors, and that the other debt to the plaintiff was unliquidated, and so regarded by all the parties, there can be no reasonable doubt, independent of the parol evidence so freely admitted by the referee, but that the note of $600, upon which Smith was liable as surety, was the note intended to be described by the parties to the instrument. If the parol evidence is allowed to have any weight, then it is clearly shown that such was the intention of the parties.

III. The note claimed by the plaintiff in this action was not the note of the partnership. The assignment by Tunnicliff was of itself a dissolution of the partnership, and his authority to make a promissory note in the name of the firm

ceased on the 21st of October, 1850.  The *note*, therefore, is not a contract of the firm, even if the debt, which is the consideration of the note, is a partnership debt.  (*Story on Partnership,* §§ 101, 313.  *National Bank* v. *Norton,* 1 *Hill,* 572.)

*D. B. Prosser,* for the respondent.  I.  The referee having found that Stewart & Tunnicliff, on the 16th October, 1850, were justly indebted to the plaintiff in the sum of $634.84, the payment whereof was provided for in schedule A of the assignment, his finding should be regarded as final and conclusive upon these facts.

II.  One partner cannot make a general assignment of the partnership effects to trustees, for the purpose of selling and distributing the proceeds among the creditors, in unequal proportions.  (*Havens* v. *Hussey,* 5 *Paige,* 30.  *Hitchcock* v. *St. John,* 1 *Hoff.* 511.  *Deming* v. *Colt; and Hayes* v. *Heyer,* 3 *Sandf. R.* 284.)  Tunnicliff, in assuming to execute the assignment as attorney for Stewart, acted without authority. *Such an act requires an express authority.*  Here none was shown or attempted to be proven.  On the contrary, it is admitted there was none.  The assignment did not take effect, or speak for the firm, until the 10th day of January, 1851, after the execution or acknowledgment thereof by Stewart; until then it was wholly inoperative, and should be construed with reference to the facts as they then existed.  A contrary construction would defeat the intention of the assignors ; for at that time the plaintiff's demand was in a note, made with the express view of corresponding with the description in schedule A.  It follows, if the assignment is to be construed with reference to the facts, as they existed on the 10th of January, 1851, the other question and objection raised and made on the hearing, are wholly immaterial.

III.  The defendants have no right to complain of the judgment ; they are not the losers thereby.  It does not appear either in the pleadings or proof that any other person or persons are entitled to the fund in their hands.

Sheldon *v.* Smith.

*By the Court*, E. DARWIN SMITH, J. Upon the basis on which the referee put his decision, I think this judgment cannot be sustained. The assignment was made, executed and delivered, by Tunnicliff, on the 21st of October, 1850. It was signed by himself, and by him as attorney for his partner Stewart, and at the same time signed by the assignees, and accepted by them, and possession of all the assigned property taken by them immediately by virtue of the same. At the time of such execution, delivery and acceptance, Tunnicliff was solely entrusted with the possession of the partnership property, and the entire management of the partnership affairs; and if he had not authority to convey such property to trustees, for the purpose of paying the partnership debts, he had the right to pay the creditors with it, and make such other disposition of the property as should be adapted to subserve the interest of the partnership.

If the absence of Stewart in California, and his entire inability to assist in the management of the concerns of the partnership, and to assent to such transfer thereof as the exigencies of its affairs might demand, did not warrant Tunnicliff in making this assignment, absolutely, it did, I think, authorize the presumption that he was duly authorized to make it as attorney for his partner, until the contrary appears, as against all persons but his absent partner; and no one else, I think, could question the validity of the assignment. It was not void *per se*, but at most voidable at the election of Stewart. (*Pierpont* v. *Graham*, 4 *Wash. C. C. R.* 232.) On his return from California, he might affirm or disaffirm the assignment. He did, in fact, affirm it. On the 10th of January, 1851, he acknowledged its execution in due form, as executed by himself; thereby distinctly affirming that it had been duly executed for him by Tunnicliff. He did not execute the assignment *de novo*. He acknowledged, and thereby ratified and confirmed it as then executed. This ratification related, necessarily, to the original execution of the instrument, and was the same, in legal effect, as if the assignment had, in

fact, been executed by Tunnicliff at the time of its date, under the fullest and most ample power of attorney from his partner. (5 *Hill,* 107. *Story on Agency,* §§ 239, 244.) The deed was thus a valid and operative deed on and from the 21st of October, 1850. So far as Tunnicliff is concerned, and so far as he could make it valid, it was a complete and perfect deed immediately on its delivery to the assignees, after its execution by him and them. After such execution and delivery, Tunnicliff had no power over it to alter, amend, or vary its terms or provisions. It must stand as a perfect, consummated deed, entirely beyond his control from that time, and must be construed and carried into effect according to its terms, like all other instruments in writing. This view, in respect to the execution and force of the assignment, negatives, entirely, the theory upon which the referee founded his report, and upon which this judgment stands. The assignment must speak for itself. Parol proof was admissible, and is always admissible, to show the extrinsic facts to which the provisions in a written instrument relate, and to aid in its interpretation. Such interpretation must always be made in view of the surrounding facts as they existed at the time ; but parol proof can have no futher effect or operation. The deed must be construed by its own terms, and its provisions applied to such existing facts. Schedule "A" of the assignment contains a provision for the payment of one note to Edgar Sheldon of about $634.84. It appears in proof, that the plaintiff had a note against Stewart & Tunnicliff for $600, and an account of $600 and upwards. In the statement made out by Tunnicliff for the attorney who drew the assignment, the claims of the plaintiff were stated thus :

"Note to Edgar Sheldon, . . . . . . $634.84

Account to " " . . . . . . . 700.00"

The provision in the assignment will clearly cover this note. It will not apply to the account, because there was a note of about the requisite amount to satisfy the provision. The account, it appears, was liquidated on the 22d of October, by

Sheldon *v.* Smith.

Tunnicliff and the plaintiff, and put into a note for $634.84. This note would precisely answer the description of the plaintiff's debt in the assignment, but it was made the next day after the assignment was executed and delivered, and therefore cannot be considered in construing the assignment. It was not in existence when the assignment was made and became operative. The referee finds that this debt of $634.84 was marked and described, and its payment provided for, in said schedule "A," annexed to the assignment. This finding is in conflict with the terms of the assignment, and is only sustainable upon the assumption that Tunnicliff had the right to alter the assignment before its confirmation by Stewart, and had therefore the right to give the $634.84 note to take the place of the $600 note held by the plaintiff, and to meet the precise description of the plaintiff's note contained in schedule "A." This assumption we have shown to be erroneous, and the conclusion falls with it, necessarily. It may be that the plaintiff is entitled to have this schedule reformed, so as to include the account which he had against Stewart & Tunnicliff at the time of the assignment, in addition to the $600 note. But the complaint was not framed with such an aspect, and contains no prayer for such relief, and no point of that kind has ever been presented or discussed by counsel ; and therefore I think we are hardly at liberty to take any such question into consideration. I think the judgment should be reversed, and a new trial granted, with costs to abide the event.

Judgment accordingly.

[MONROE GENERAL TERM, December 6, 1858. *Welles, Smith* and *Johnson,* Justices.]