JACKSON, *ex dem.* NOAH, *against* DICKENSON and THOMPSON.

THIS was an action of ejectment brought to recover a lot of land in *Orange* street, in the city of *New-York*, in the occupation of the defendant, *Thompson.* The cause was tried before Mr. J. *Van Ness*, at the *New-York* sittings, in *December*, 1816.

The premises in question formerly belonged to *Ephraim Hart*, against whom a judgment was docketed in favour of *Joel Hart* on the 5th of *May*, 1812, on a bond in the penalty of 30,000 dollars, conditioned for the payment of 15,000 dollars, and secured by a warrant of attorney. A *fieri facias* was issued on this judgment, returnable on the 16th of *May*, and delivered to *B. Ferris*, then sheriff of the city and county of *New-York*, on the 9th *May*, to which the sheriff returned that he had levied of the lands and tenements of the defendant therein, 4,759 dollars. The plaintiff also gave in evidence a deed from the sheriff to his lessor in fee, for the premises in question, and other property, dated the 1st of *March*, 1813, and a memorandum of a lease of the premises for two years, from the plaintiff's lessor to the defendant *Thompson*, under which he entered into possession, but in *February*, 1816, refused to pay rent to the lessor of the plaintiff, disclaimed holding under him, and claimed to hold under the other defendant, *Dickenson.*

The defendants produced in evidence a mortgage of the premises in question, executed by *Ephraim Hart* and his wife to the defendant *Dickenson*, dated the 18th *April*, 1811, to secure the payment of a bond of the same date, conditioned to pay the sum of 2,442 dollars, with lawful interest, on or before the 18th of April, then ensuing. On the 10th of *March*, 1813, *Dickenson* filed a bill in the court of Chancery against *Ephraim* and *Joel Hart* and others, to foreclose the mortgage, and a decree having been made for the sale of the premises, they were sold by a master, and conveyed to *Dickenson* in fee, by deed, bearing date the 1st of *March*, 1816. *Ferris*, the sheriff, testified that the sale under *J.*

*The land of A. was sold under an execution at the suit of B. against A. on the 1st of March; on the 10th, a mortgagee of the same land filed a bill of foreclosure in chancery against A. and B., and on the 19th the sheriff executed a deed to the purchaser under the execution; Held, that the deed relates back to the time of the sale, and the purchaser is not precluded from contesting the validity of the mortgage in an action of ejectment at law, he not being a party to the bill, and as his title was acquired previous to notice of a lis pendens in chancery, although not consummated until afterwards. Notice of a lis pendens in chancery, to affect a subsequent purchaser, commences with the service of the subpœna. The affidavits of jurors are admissible to show that a mistake had been made in taking their verdict, and that it was entered differently from what they intended.*

*Hart's* execution was made on the 1st of *March*, 1813, after a regular advertisement, but that the deed was not delivered until the 19th. He further stated, that he was not present at the sale, and only knew from the returns of the officer who made it, to whom the land was sold : that from those returns it appeared, that of several parcels of land which were sold at the same time under the execution, some were bid off by *Joel Hart*, and some by the plaintiff's lessor; that the property in question appeared to have been bid off by *J. Hart*, but that it was written on an erasure, and he could not say to whom it was originally entered; that within a day or two after the sale, (or, as he said on being examined again in a subsequent part of the trial, it might have been on the day of the sale,) *J. Hart*, and *Noah*, the lessor of the plaintiff, called on him together, and directed the deed to be made out to the latter : that he did not recollect that *Noah* paid any money ; that when *J. Hart* and *Noah* came to settle, *J. Hart* said, that he had taken *Noah's* notes for the consideration money, and that the witness insisting to have some money to pay the printer's bills, &c. *J. Hart* paid the sum, and he took his note for the residue. The witness, however, on his re-examination, stated, that he thought, on reflection, that it was *Noah* who brought him the money to pay the expenses of the sale. The plaintiff contended, that the bond and mortgage to *Dickenson* were usurious and void, and produced testimony in support of this allegation.

The deposition of *Mordecai M. Noah* was produced on the part of the plaintiff, who testified, that in 1811, shortly before the delivery of the bond and mortgage, he was present at one or more interviews between *Dickenson* and *Ephraim Hart*, respecting a debt due from the latter to the former, and that they spoke of a note held by *Dickenson* against *E. Hart* having been dishonoured ; that *Dickenson* appeared to be very pressing to obtain his debt ; that on the 18th of *April*, in the same year, at the request of *E. Hart*, he took the bond and mortgage to *Dickenson's* attorney, for which he was to receive a note and check, and that on the 19th of *April* he received from the attorney *E. Hart's* note for 1200 dollars, dated *December* the 20th, 1810, payable in

ninety days to *J. Winter*, or order, and endorsed by *Winter*, and *E. Hart's* check on the *Manhattan* bank, dated the 12th of *April*, 1811, for 1000 dollars.

*Napthali Phillips*, on the part of the plaintiffs, testified, that in or about the month of *December*, 1810, *E. Hart* put into his hands, as a broker, to sell and raise money on for *Hart*, two notes drawn or endorsed, the witness did not recollect which, by *E. Hart* and *J. Winter*, one being the maker and the other the endorser, for twelve or fourteen hundred dollars each, payable at three and four months; that he procured the notes to be discounted by *Dickenson*, at the rate of at least one and a half per cent. a month, and that *E. Hart* was at that time much pressed for money. It was stated by another witness, on the part of the plaintiff, and who attended the sale under the execution, that *Noah* was present and bid, and that all the lots, excepting one bid for by the witness, were struck off to him. It was further proved, that about the 30th of *March*, 1813, *Noah* delivered *J. Hart* an accountable receipt of the latter for 260 dollars, which amount had been placed in his hands by *Noah*, and a sum in cash; the accountable receipt, the interest then due thereon, and the cash, amounting to 3400 dollars, for which sum *J. Hart* gave *Noah* a receipt, as for the full amount of the houses and lots purchased by *Noah*, under the execution against *E. Hart*. A variety of evidence, beside that which has been already detailed, was produced in relation to the question, whether *Noah*, the lessor of the plaintiff, was the real owner of the premises, or was merely a trustee for *Ephraim* or *Joel Hart*.

A verdict was found for the plaintiff, subject to the decision of the court, on this point, how far the plaintiff was bound by the proceedings in chancery. All the other questions arising in the cause were submitted to the jury.

At the time of bringing on the case to argument, the defendant also moved for a new trial, on the grounds that the verdict of the jury had been incorrectly taken, and of surprise, and for this purpose produced several affidavits.

Five of the jurors on the trial swore, that the only question of fact submitted to them was, whether a certain mortgage, executed by *Ephriam Hart*, under which the defendants

ALBANY,
August, 1818.

JACKSON
v.
DICKENSON.

claimed title, was usurious or not; and that the jury, by their verdict, found, and so expressed it to the court, that there was "usury on the note," meaning and intending one of the notes negotiated by *Napthali Phillips.* The deponents also said, that there was no other evidence offered on the trial to prove any usury on either of the notes, except the testimony of *Phillips;* and that at the time of delivering their verdict, the court inquired of the jury whether they intended to find that the usury in the note was connected with the mortgage, or to that effect; to which one of the deponents replied, that the jury did not intend to find so, but the deponents believe that the answer so made was not heard by the court.

The defendant, *Dickenson,* deposed, that having, previous to the trial, seen a copy of the deposition of *Mordecai M. Noah,* he was prepared with testimony to rebut, and did rebut, any presumption of usury in the mortgage, arising from the deposition, in a manner satisfactory to the jury, as appeared by their verdict; but not having had the least intimation or suspicion, that the plaintiff intended to impeach the note, the amount of which constituted a part of the sum secured by the mortgage, he was surprised by the testimony of *Phillips,* nor did he perceive the bearing of it, until his counsel were summing up, when he went for his bank and bill books, but was unable to find the entries, until after the judge had charged the jury, and that a few minutes after the jury went out, he found the entries, and had a witness in court to prove that the notes received from *Phillips* had been paid in bank. He also deposed that neither of those notes, (one being for 925 dollars and 75 cents, and the other for 675 dollars,) had any connection whatever with the note referred to by *Mordecai M. Noah;* but that that note was for money lent by the deponent to *E. Hart,* at the rate of seven per cent. and that the difference between the sum specified in the mortgage, and the note and check of *E. Hart,* was actually paid by the deponent, in money, to *E. Hart,* before the mortgage was executed. There were two other affidavits in support of the allegation, that the notes mentioned by *Phillips* had actually been paid.

*Slosson,* for the plaintiff. The question is, whether the
lessor is to be deemed a purchaser, *pendente lite,* so as to be barred by the decree of the court of chancery. The
pendency of a suit in chancery commences from the service of the *subpœna,* after the bill is filed. (*Murray* v. *Ballou,* 1 *Johns. Ch. Rep.* 567. 1 *Vern.* 318.) The general rule is, that all persons in interest, at the commencement of the suit, must be made parties. (*Hickcock* v. *Scribner,* 3 *Johns. Cas.* 311. *Johnson* v. *Hart, Id.* 322.) *Noah* became a purchaser on the 1st of *March,* 1813, and the bill was filed on the 10th of *March;* but it does not appear when the *subpœna* was served. It is clear, however, that it could not have been served until after the purchase of *Noah,* at the sheriff's sale. His title, then, was not acquired *pendente lite;* and he had an interest which entitled him to be made a party to the suit; and, not being a party, he is not bound by the decree.

Though the deed of the sheriff was not, in fact, executed and delivered until the 19th of *March,* yet it has relation back to the day of sale, or the time when it ought to have been delivered. (*Jackson* v. *Raymond,* 1 *Johns. Cas.* 85. *n. Heath* v. *Ross,* 12 *Johns. Rep.* 140.) So, in equity, whatever, for a valuable consideration, is agreed to be done, is considered as done, and money covenanted to be laid out in land, is considered as land, and descends to the heir. (3 *P. Wms.* 27. 215. 1 *Salk.* 154. 2 *Powell on Contracts,* 56. 58.) If the doctrine of relation, as laid down by the court, is applied to this case, the lessor of the plaintiff must be deemed to have had a title to the premises on the 1st of *March,* prior to a *lis pendens,* and which cannot be defeated by a decree in that suit, to which he was not a party. That a person acquiring an interest, *pendente lite,* need not be made a party, and is bound to take notice of the proceedings in the suit, at his peril, is deemed a very rigorous rule, and has been adopted only from necessity.

As to the affidavits which have been read to support the motion for a new trial, on the ground of newly-discovered evidence and surprise, we object, *first,* that affidavits of jurors to impeach or alter their verdict are not admissible; (*Dana* v. *Tucker,* 4 *Johns. Rep.* 487. *Owen* v. *Warburton,*

4 *Bos. & Pull.* 326. *Jackson* v. *Williamson,* 2 *Term. Rep.* 28½.) and, secondly, that the facts stated are not sufficient to show any *surprise* on the part of the defendants, or to induce a belief that the additional evidence, if it had been produced to the jury, would have induced them to find a different verdict. There can be no use in sending back a cause to another jury, if the new testimony cannot vary the result. The jurors say they found usury in one of the notes, though not in the mortgage; but their finding a verdict for the plaintiff shows they considered the mortgage usurious as well as the note.

*T. A. Emmet,* contra. The question of usury ought to have been raised, if at all, in the suit in chancery, where justice would have been done, by directing the principal and the lawful interest to be paid.

The lessor of the plaintiff having acquired his title subsequent to the commencement of the suit in chancery, must be affected by the proceedings in that cause. The time when a *subpœna* is served, is material only between the parties to the suit. As it regards the rest of the world, the filing of the bill is the commencement of the suit; and a suit actually pending in a court of record, is notice to all the world. To take a conveyance of the property, during the pendency of a suit, is champerty, and renders the deed void. (*Jackson, ex dem. Bryant,* v. *Ketchum,* 8 *Johns. Rep.* 479.) It is clear, that no money passed from *Noah,* at the time of the purchase. He knew of the proceedings in chancery, and was, then, a trustee for the parties to the suit in chancery.

Again; the defendant D., as a mortgagee, had a right to bring his action to put *Hart* or *Noah* out of possession. He has, moreover, acquired a distinct title, as a purchaser, under the decree of the court of chancery. He has acquired a *legal* title, which merges all title under the mortgage. He is a *bona fide* purchaser under a *judicial* sale. The not being made a party can only give *Noah* a right to redeem; and he might, by filing a cross bill, have claimed the equity of redemption. But after lying by, and permitting the suit to go on to a

final decree and sale, he comes too late with his objection.
In *Jackson, ex dem. Bartlett*, v. *Henry*, (10 *Johns. Rep.* 185.)
it was decided, that a *bona fide* purchaser, under a sale duly
made pursuant to the statute, by virtue of a power contain-
ed in the mortgage, was not affected by usury, in the original
debt for which the bond and mortgage were given.(*a*)

Where a person brings his action, to be relieved against
a usurious contract, he must first tender all the money really
advanced. (*Fitzroy* v. *Gwillim*, 1 *Term Rep.* 153.)

Affidavits of jurors, compatible with their verdict, and
which do not impeach it, are admissible. Here the jurors
say only, that a *mistake* has been made, by the clerk or the
judge, in entering their verdict.

*Harison*, in reply, said, that it was a well settled and very
salutary principle, that where a bill was filed, and a *subpœna*
issued, all subsequent purchasers must be bound by the de-
cree, without being made parties. The mere filing of a bill
is not sufficient to create such a *lis pendens*, as will affect
subsequent purchasers; the suit must be in full prosecution;
the *subpœna* must be served. Such was the rule, as laid
down in *Murray* v. *Ballou*. The law, as it has been
stated, is not denied by the counsel, on the part of the de-
fendants. He alleges merely, that the lessor of the plaintiff
was not a purchaser at the sheriff's sale, and that he ac-
quired no interest or title, until after the suit was pending
in chancery. (Here the counsel discussed the evidence in
the case.)

YATES, J. delivered the opinion of court. The rule
that a *lis pendens* in the court of chancery, (1 *Johns. Chan.
Rep.* 576.) which must begin from the service of the subpœna
after the bill is filed, is considered notice to a subsequent
purchaser, so as to affect and bind his interest, cannot now
be controverted; but according to the facts disclosed by
the testimony in this case, it does not appear that the suit
in chancery had been instituted when the sale took place.

(*a*) In *Jackson, ex dem. Sternbergh*, v. *Dominick*, (14 *Johns. Rep.* 435.) the *mortgagee*
himself, being a party to the usurious contract, was considered not to be such a *bona
fide* purchaser.

The deed, although subsequently executed by the sheriff, to the lessor of the plaintiff for the premises in question, cannot then be illegal and inoperative, on the ground of *notice*, for the purchase was made on the first of *March*, and the filing of the bill, (without noticing the time of issuing the subpœna,) was not until the 10th of *March*. The subsequent delivery of the deed, being mere matter of form, must have relation back to the time of purchase at the sheriff's sale. When the subpœna issued, does not appear. In *Jackson* v. *Raymond*, (1 *Johns. Cas.* 85.) it is stated, in the opinion delivered by one of the judges, as a general principle, that whenever it is intended to be shown, that nothing passed by a grant, by reason that at the time there was a possession in another adverse to the grantor, the time to which the grant is to relate, is the time when the bargain or contract for the sale and purchase of the land was finally concluded between the grantor and grantee; and, consequently, any intermediate adverse possession, before the execution of the conveyance, which is the technical consummation of evidence of grant, can never affect it. If this principle is correct, it applies with equal, or greater force, to the commencement of a suit in chancery, between the time of a sheriff's sale, when the purchase is actually made, and the giving of the deed by him. In such case, the delay in not delivering the deed is an omission of duty in the public officer, and his *laches* ought not to prejudice the rights of the party.

That the lessor of the plaintiff was the purchaser, cannot now be questioned. There was sufficient testimony to authorize the jury to infer it. *Ferris*, the sheriff, on being called a second time, stated, that, on reflection, he thought that *Hart* and *Noah* came to him on the day of sale, and requested that the deed should be given to *Noah*. If, then, *Noah* was a *bona fide* purchaser at the sheriff's sale, before the existence of the suit in chancery, or there was a *lis pendens*, it follows, that to make the decree conclusive on him, he ought to have been made a party. Not being a party, so far as relates to his title, the rights of the mortgagee, under the mortgage sale, notwithstanding the decree, remained open for discussion, and the purchaser at the sheriff's sale

retained the right of contesting its validity at law, without tendering the amount of principal and interest due on the mortgage. If, on the trial, it should be made to appear that the consideration for which the mortgage has been given is usurious, it is sufficient to protect the lessor in claiming under the sheriff's deed. The question of usury was therefore important, in settling the rights of the parties, and although the testimony on that part of the case might, perhaps, warrant the verdict, as it now appears; yet, from the facts stated by the jurors, as to what took place in delivering in their verdict, it would seem not to have been as entered by the clerk at the circuit. What the jurors have deposed must be noticed by the court, because their affidavits are not as to what transpired while deliberating on their verdict, but as to what took place in open court in returning their verdict, and shows that the clerk made a mistake in entering, or the court in directing, a different verdict. The information afforded by the affidavits of the jurors, is not to impeach, but to support the verdict really given by them. This mistake, then, is manifest; and from the affidavits of *Pratt* and *Dickinson*, there is reason to believe that the defendants were surprised with testimony on the trial; and it being an action of ejectment, in which the rule applicable to other cases, as to new trials, is not so rigidly enforced, it is the opinion of the court, that a new trial ought to be granted.

New trial granted.