Jacobus *v.* Mutual Benefit Life Insurance Co.

---

JACOBUS, appellant, and THE MUTUAL BENEFIT LIFE INSURANCE COMPANY and others respondents.

1. A mortgage executed and acknowledged and put upon record by the mortgagor, in pursuance of a prior contract for a loan on such security, and afterwards delivered to the mortgagee when the mortgage money is advanced, will have priority in equity over liens of mechanics and

materialmen for work and materials furnished after the mortgage is recorded, for the erection of a building on the mortgaged premises, built by the mortgagor, which was commenced between the recording of the mortgage and its delivery; the mortgagee having no knowledge of the commencement of the building when he parted with his money. In equity, the mortgage, when delivered, will have relation to the agreement for the loan.

2. A judgment under the mechanics' lien law, against the owner of the land, is conclusive as respects a subsequent mortgagee.

3. Within the meaning of the mechanics' lien law, a building is commenced when the permanent work upon the ground, whether of excavation or construction, has progressed so far as to inform reasonable observers that it is designed for the erection of a building.

4. An instrument in form of a mortgage does not become a mortgage by the mere fact of its being recorded, if it has not been delivered between the parties. Per DIXON, J.

5. Where a mortgagee has, in his pleading, claimed priority for his mortgage, on the ground that it was delivered to him on a certain day to secure a debt then existing, he cannot, at the hearing, entitle himself to such priority, on the ground that, although the debt was actually created and the mortgage was actually delivered after that date, yet, by reason of other circumstances, not disclosed in the pleading, his lien should, in equity, relate to the day named. Per DIXON, J., (a minority of the court concurring.)

6. A judgment for the plaintiff upon a mechanics' lien claim, is not conclusive against a mortgagee of the realty, whose mortgage was created and recorded after the building commenced and before the claim was filed, and who was not made a defendant in the suit. It is, notwithstanding the judgment, competent for such a mortgagee to show, in a contest for priority between himself and the lien claimant, that the claim filed is not according to the statute, and hence the debt is not a lien. Per DIXON, J.

7. Where an owner of land has commenced the erection of a building, and then given a mortgage on the premises, which is duly recorded, and then conveyed the property subject to the mortgage, if, afterwards, the claimant of a mechanics' lien files his claim, making only the last purchaser defendant as owner, the mortgagee's estate is unaffected by the lien. Per DIXON, J.

This case in the Court of Chancery is reported in 11 *C. E. Green* 389.

*Mr. R. S. Green* and *Mr. Cortlandt Parker*, for appellant.

*Mr. C. F. Hill, Mr. E. S. Atwater, Mr. W. P. Wilson* and *Mr. Williamson*, for respondents.

DEPUE, J.

I concur in the opinion of the Chancellor that the excavation for the foundation, when so far progressed with as to make it apparent on the ground that the building is to be erected, is the "commencement of the building," within the meaning of the mechanics' lien law. If the work of erecting the structure is proceeded with thereafter, with such diligence as to make it apparent that the original intention to build has not been abandoned, the lien of persons furnishing labor or materials for the construction of the building, will relate to the time of such commencement. In this respect, I agree fully with the views of Mr. Justice Dixon in his opinion.

I also concur in the opinion of the Chief Justice that a judgment recovered on a lien claim has the same quality of conclusiveness as an ordinary common law judgment, when put in issue in a collateral proceeding; that it may be avoided for fraud, but cannot, in such proceeding, be set aside for imperfections in the lien claim, or irregularities in the prosecution of the suit.

The reasoning of Mr. Justice Dixon on the first of these propositions, and of the Chief Justice on the second, is so thorough and satisfactory that no further discussion of those matters is necessary.

The contest is between Jacobus, the mortgagee, and the lien claimants, Thompson, Warner, and Purdy & Co., with respect to the priority of the Jacobus mortgage for $60,000 over the mechanics' lien.

The loan for which this mortgage was given was negotiated by one Butterfield with Dimock. The bargain was concluded the latter part of April or the 1st of May, 1870. It was for a loan of $80,000, for which a mortgage for $60,000 was to be given, and the residue to be secured by a pledge of stock. The mortgage was directed to be made out to Jacobus, and in pursuance of this arrangement, Dimock and his wife made and executed the mortgage in question. It bears date on the 2d of May, 1870, and was acknowledged on the 4th, and duly recorded in the clerk's office of the county of Union,

Jacobus v. Mutual Benefit Life Insurance Co.

on the 13th of that month. After the mortgage had been re-corded, Dimock took it from the clerk's office and carried it to New York city, and on the 7th of June, 1870, delivered it to Jacobus, together with the stock to be pledged for the additional $20,000, and received Jacobus' check for the $80,000.

Butterfield was a partner in business with Jacobus. Whether he was his agent in negotiating this loan, does not appear. Nor is it necessary, in order to give Jacobus such rights as arise from the original contract for a loan, that Butterfield should have had authority, at that stage, to act in the prem-ises as his agent. The contract with Dimock was for a loan to be made by Jacobus, and the security for it was directed to be made to him. By accepting the security and making the loan upon it in execution of the precedent agreement, Jacobus ratified the act of Butterfield. The subsequent adoption of an act of agency relates back to the original transaction, and is the same in law for all purposes as if the authority had previously been conferred. *Lawrence* v. *Taylor*, 5 *Hill* 107 ; *Sheldon* v. *Smith*, 28 *Barb.* 593.

The first work in the excavation for the foundation was done on the 28th of May, 1870.

The contention of Jacobus is, that in equity his mortgage will have relation as an encumbrance, to the time when the mortgage was recorded. On the other hand, the lien claim-ants insist that the mortgage cannot be considered as an encumbrance, except from the time of delivery to Jacobus and the actual advance of the money upon it, and that by force of the provisions of the mechanics' lien law, they are entitled to priority over the mortgage.

There are numerous cases in which, in courts of law, effect has been given to common law conveyances, such as deeds and mortgages, as of a time antecedent to the time of the complete performance of all the acts which are necessary in law to perfect the title. This is done in order to give effect to the intention of the parties. How early this equitable doctrine was adopted by courts of law, will appear from a

citation from Mr. Viner's abridgment: "Where there are divers acts concurrent to make a conveyance, estate, or other thing, the original act shall be preferred, and to this the other acts shall have relation." *Vin. Abr., Relation, E* 8, *vol. XVIII., p.* 290. Mr. Cruise also states the doctrine with distinctness, in the following words: "There is no rule better founded in law, reason, and convenience, than this: that all the several parts and ceremonies necessary to complete a conveyance, shall be taken together as one act, and operate from the substantial part by relation." 5 *Cruise on Real Prop.* 510. This passage is quoted with approbation, by Catron, J., in *Landes* v. *Brant*, 10 *How.* 348–372, in which case it was held by the Supreme Court of the United States, that a patent to a debtor holding a defective Spanish title enured, by relation, to the benefit of a purchaser at a sale under execution, made prior to the issuing of the patent. Where several acts are necessary to make a complete conveyance, *as between the parties to it*, if justice requires it, the conveyance will be regarded as having been made at the first act, to which all the subsequent acts will have relation. *Pratt* v. *Potter*, 21 *Barb.* 589. A deed may, in its operation, be made to relate back to the time of the contract for the purchase of the land, as between the same parties, where such relation is in furtherance of justice. *Jackson* v. *Bard*, 4 *Johns. Ch.* 230; *Jackson* v. *Bull*, 1 *Johns. Cas.* 81. If a bargain and sale be enrolled within six months, it relates to the time of its date, and passes *ab initio*. Though the bargainor or bargainee die after the indenture executed, and before enrollment, the estate passes. *Com. Dig., Bargain and Sale, B* 9. In *Doe* v. *Knight*, 5 *B. & C.* 671, a mortgage sealed and executed by the mortgagor, and declared by him to be his deed, in the presence of a witness, was held by the court—Bayley, J., delivering the opinion—a valid conveyance at law, as against a devisee in trust for the payment of debts, although it was kept by the mortgagor in his own possession, and did not come to the hands of the mortgagee until after the death of the mortgagor. In *Rogers* v. *Potter*, 3 *Vroom*

Jacobus v. Mutual Benefit Life Insurance Co.

78, a widow to whom dower was assigned was allowed to recover damages for waste on the premises assigned to her, which had been done pending her application for dower, and before her estate in dower had become consummated by actual assignment. Other instances of the application of the doctrine that deeds of conveyance, when once delivered, shall have operation, by relation, as of a time prior to delivery, if it be necessary to effect the intention of parties, and be required for the advancement of justice, will be found in the following citations: *Com. Dig., Bargain and Sale, B* 9, *B* 10; *Jacob's Law Dictionary, Title Relation*; *Shelley's case,* 1 *Coke* 99; *Johnson* v. *Stagg,* 2 *Johns.* 510; *Heath* v. *Ross,* 12 *Johns.* 140; *Jackson* v. *Dickenson,* 15 *Johns.* 309; *Jackson* v. *Ramsay,* 3 *Cow.* 75; *Fuller* v. *Van Geisen,* 4 *Hill* 171–174; *Barncord* v. *Kuhn,* 36 *Penn.* 388; 4 *Kent* 454; 2 *Washb. on Real Prop.* 619.

Whatever difficulty may be encountered in giving effect to this legal principle in a court of law, because of the rigidity of its forms of procedure, no embarassment whatever will be experienced in giving it full scope, under the more flexible procedure of a court of equity. As was said by Ventris, J., " Relations are fictions of law which are always accompanied with equity " (2 *Ventris* 200). It is a maxim of equity that what has been agreed to be done, and what ought to be done, shall, for the advancement of justice, be regarded as done. 1 *Story's. Eq.*, §§ 64 *g*, 69. In the application of this principle to executory contracts, a court of equity will regard the contract as if executed as soon as made, so far as the rights of the parties *inter sese* are concerned, especially if such relation be necessary to carry into effect the intention of the parties to the contract. An apt illustration of the practical administration of this rule will be found in the doctrine of the court with respect to the specific performance of contracts for the conveyance of lands. The contract itself determines the rights and obligations of the parties *inter sese*, and is regarded as if it had been specifically executed. *Haughwout* v. *Murphy,* 7 *C. E. Green* 531; 1 *Sugden on Vendors* (175) 270.

The negotiations between Butterfield and Dimock resulted in a contract for a loan upon a security to be given. That the contract was for a mortgage on the premises, as they were at that time, is manifest. The sum loaned was large, and there is no proof that either Butterfield or Jacobus consented to accept anything less than the security of the title as it then was, or that they knew that Dimock proposed to erect a building on the mortgaged premises, or that they were aware, when the money was advanced, that he had commenced its erection, and that the mortgaged premises might thereby become subject to liens having priority over the mortgage bargained for. As between him and Dimock, Jacobus was entitled to have the title that he bargained for, as the security for the loan. *Lounsberry* v. *Locander*, 10 *C. E. Green* 554. The mortgage was executed, acknowledged, and recorded. Everything necessary to make it a complete instrument had been done, except delivery. There can no doubt that as against Dimock or a grantee under him, by a voluntary conveyance unknown to the mortgagee, the mortgage when delivered would, in equity, have relation to the time when it was deposited for record, if not to the time when the contract to loan was concluded.

But the doctrine of relation being a fiction of law adopted for the advancement of justice, will never be resorted to where it would occasion wrong to third parties. *Butler and Baker's case*, 2 *Coke* 25; *Jackson* v. *Bard*, 4 *Johns.* 230.

The inquiry then arises whether the lien claimants have such rights as forbid the application of this doctrine in this case.

The lien claimants have no equities superior to the equity of the mortgagee. The lot, without improvements, was worth $60,000. The building projected was of palatial dimensions. In its unfinished condition, $125,000 had been expended on it. The work of excavation, which had been done before the 7th of June, when the mortgage was delivered, amounted to the insignificant sum of $61.50. The entire work of the building was done " by the day," by persons employed by Dimock

No part of it was put out under contract. The services for which Thompson filed his lien claim, are stated therein to have been performed between the 1st of June, 1870, and the 1st of October, 1873. Warner's claim is for work done between July 1st, 1871, and December 23d, 1872, and Purdy & Co.'s, for work done between May 1st, 1872, and May 1st, 1873. Before any of the services for which the liens were filed were rendered, with the exception of the services of Thompson as architect and superintendent, between the 1st and 7th of June, the money for which the mortgage was given was advanced, and the mortgage had been delivered. If the registry took effect from the delivery of the mortgage, it became operative as constructive notice before any of the services were performed for which the liens are claimed, with the exception of those of Thompson between the 1st and 7th of June.

If the lien claimants are permitted to occupy a position of advantage, they do not acquire it in virtue of any equity which can countervail the strong equity of the mortgagee. They claim that position under the eleventh section of the mechanics' lien law of 1853, as amended by the first section of the supplement of 1863.

By these sections, provision is made for a special *fieri facias* upon the judgment on a lien claim; and it is provided that the deed of the sheriff to the purchaser shall convey the estate in the lands and building which the owner had at, or at any time after, the commencement of the building, "subject only to all mortgages and other encumbrances created and recorded, or registered, prior to the commencement of the building." *Nix. Dig.* 574, 581, §§ 11, 66; *Revision* 456, § 23.

The object the legislature had in view in this enactment, was to make the public records the repository of information to those who proposed to do work or furnish materials in the erection of buildings, of the encumbrances which should have priority over their liens. The appellant's mortgage was executed and acknowledged ("created") and recorded before the building was commenced. The lien claimants do not pretend

that they were misled by the condition of the record.    If they had examined the records they would have obtained the information which the act provides for.    Two of the claimants did no work until long after the mortgage, in the strictest sense, had become in all respects perfect.    The third had performed comparatively little service before that event.    Under these circumstances, to give them priority over the appellant's mortgage would be inequitable.

In my judgment, the appellant is entitled, in a court of equity, to priority with respect to this mortgage over the lien claimants.

Nor am I willing to yield to the notion that the appellant is debarred of this relief on the ground of supposed defects in his answer.    No objection on that ground was made by counsel, either in the Court of Chancery or in this court.

The decree should be reversed in so far as the appellant's mortgage for $60,000 was postponed to the judgments of the lien claimants.

BEASLEY, C. J.

My conclusions in this case are as follows, viz.:

*First.* That the building in question was begun, within the meaning of the lien law, before the delivery of the Jacobus mortgage.    On this point, I agree with the view expressed in the opinion of Judge Dixon.

*Second.* I dissent from the doctrine of that opinion touching the effect to be given to a judgment obtained by force of the mechanics' lien law.    It seems to me that such a judgment rendered against the owner of the land, is final as against a subsequent mortgagee.    It is true that according to the principles of the common law, a judgment binds only the defendant and his privies; but the mechanics' lien law imparts to its judgments a greater efficacy than this.    This act provides that the suit to enforce the lien shall go against the owner and builder; no other person can be joined as a party; and it makes the judgment so obtained, a lien on the land from the commencement of the building, and it declares that a sale thereunder

shall pass the title of such owner, clear of all subsequent encumbrances. To this purpose, I think the language of the act very clear. It says that the sheriff's deed shall convey the premises, "subject to all prior encumbrances or estates created by or obtained against such owner afterwards, and from all estates and encumbrances created by deed or mortgage made by such owner, or any one claiming under him, and not recorded or registered in the office of the clerk of the county, at the commencement of said building." (*Nix. Dig.* 574, § 11.)

In the suit against the owner, the court, by force of this act, is required to pass upon the regularity of the proceedings of the lien claimant, and to adjudge whether his claim constitutes a lien. After the rendition of such judgment, and in view of the statutory provision just cited, declaring that a sale under it shall pass the title, free from the claims of subsequent encumbrances, it is difficult to see how it can be plausibly contended that in a collateral proceeding such judgment can be superseded, on the plea that the proceedings on which it is founded were irregular or informal. That such judgment, like all other judgments, can be impeached by any person affected by it, on the ground of fraud, cannot be questioned; but it would appear to be invincible against all other assaults. And it is obvious that it must have this force against all the world, or it has no force whatever against any one but the owner. If the subsequent encumbrancer is not conclusively bound, he is not bound at all, for the judgment must be effective against him under the statute, or it is *res inter alios acta,* and cannot even be offered in evidence against him, except for the single purpose of showing the transfer of the title of the owner to the purchaser at the sheriff's sale. If these judgments are, in truth, possessed of no greater force than this, then the act of purchasing property under them is an act of simple folly, for the title so acquired must be in doubt, so long as a mortgage dating subsequent to the commencement of the building remains unsued on, or until the statute of limitations has granted the title. A legislative act thus leading in its

orderly operation to the sale of contestable titles, would be a marvel of unwisdom, and the intention to produce such a result is not to be imputed to the framers of this law, unless from reasons entirely demonstrative. It may not be a perfect scheme which permits a judgment against one man to have any effect in concluding the rights of another who is no party to it, but it is to be remembered that by giving to the lien claimant's judgment the force I attribute to it, the person holding the junior encumbrance is subjected to the inability to object only to irregularities and informalities, because if the judgment so entered be for a sum greater than what was due, or for a claim which was, in truth, not lienable, a case of fraud would be presented, and thus the transaction, notwithstanding the judgment, would be open to invalidation. It is, perhaps, no great hardship to a mortgagee to say to him that he cannot have the right to set up against the lien claimant errors in form or mistakes in procedure ; but, at all events, he takes his mortgage with full knowledge that the question, whether the claims of workmen and materialmen are liens or not, and that the amount of such claims, will be settled in a suit, not against himself, but in one against the owner of the building, who, for this purpose, will be his representative. Whether it would not be well in such a suit, to bring in as parties all persons claiming an interest in the property, is a question not necessary to consider, as the subject falls exclusively within the domain of legislation.

My conclusion under this head is, that the judgments in question are conclusive, both with regard to the amount due upon them and as to the fact of their being valid liens upon the premises.

*Third.* I likewise think that the recording of the $60,000 mortgage, under the circumstances disclosed in the proofs, operated as a notice, putting lien men and all subsequent encumbrancers on inquiry, and that, therefore, by the effect of the doctrine of relation, the mortgage in question, after delivery, related back to the time of such recording; and with respect to this question, I concur with the views expressed in the

opinion of Judge Depue. But, in the fourth place, I agree with the conclusion of Judge Dixon, that this doctrine of notice and of relation cannot be invited to help the appellant, as there is no such case made in his answer. Consequently I vote to affirm the decree appealed from.

DIXON, J.

The bill of complaint in this cause was filed by The Mutual Benefit Life Insurance Company, to foreclose a first mortgage upon property in Elizabeth. The appeal arises out of a dispute between defendants as to the priority of their respective claims. The defendant appealing, Lyman A. Jacobus, claims as mortgagee under two mortgages, made by Anthony W. Dimock and Helen W., his wife, to him, one dated May 2d, acknowledged May 4th, and recorded in the Union county clerk's office, May 13th, 1870, securing a bond of the same date for $60,000, due December 31st, 1870; the other, dated March 18th, 1871, and acknowledged and recorded shortly afterwards, securing a bond for $20,000. The defendants responding, E. F. Purdy & Co., Thomas Thompson, and Wyllys H. Warner, claim mechanics' liens upon the mortgaged premises, by reason of their having furnished materials and labor for the construction of a building thereon. These respondents insist, that their claims attach as of the "commencement of the building," by force of the act known as the mechanics' lien law, and that the "commencement of the building" there intended, is, in this case, the beginning of the excavation for the cellar, which occurred May 28th, 1870; and that the appellant's $60,000 mortgage did not become a lien until June 7th, 1870, the time of the actual advance of the money loaned upon it; and that his $20,000 mortgage did not become a lien until March 18th, 1871, which last position is not disputed.

The appellant, on the contrary, insists that the evidence fixes the commencement of the excavation for the cellar at a date between June 6th and June 13th, 1870; that the true "commencement of the building" is not the beginning of the

excavation, but the beginning of erection or construction on the ground, which was on June 16th, 1870; and that his $60,000 mortgage must be regarded as relating to a date at least as early as May 13th, 1870, the date of its record.

Mrs. Dimock, one of the mortgagors, was the owner of the property while the building was being constructed, and continued to own it until May 1st, 1873, when she and her husband conveyed it to Joseph T. Rowand.

I think the evidence fairly establishes the fact that the excavation of the cellar commenced on May 28th. The only witness on the subject is Thomas Sulzer, a gardener in the employ of the owner, who had charge of the work. He bases his evidence, as to the time, upon a memorandum, the honesty of which is not impugned, contained in a book in which he was accustomed, at the close of each week, to enter his weekly transactions in the service of his employer. His entries were designed to show, generally, the number of men and teams he had under him, the places where they worked, the wages due them, the amount of money expended by him, and other matters of like nature. The entry relied on is substantially as follows, referring to the year 1870, May 28th to June 4th:

## THE NEW CELLAR.

| | |
|---|---:|
| Eighteen days' work, at $1.75,    -    -    -    - | $31 50 |
| Twelve days' work, horse and cart, at $2.50 a day, | 30 00 |
| | $61 50 |

This new cellar, he says, was the cellar of the house in question, on the corner of Broad and South streets, in Elizabeth, and the work was done in digging that cellar; and he swears that the entry was made on June 4th, although the fact that his subsequent entries as to this cellar, June 6th to June 13th, and June 13th to June 18th, describe it as "cellar, corner Broad and South streets," and the fact that his evidence is given nearly four years after the transaction, make it quite possible that he may be mistaken; yet, I think, the strong

probability, on the testimony as it stands, is that between May 28th and June 4th, these thirty days of labor were expended on this cellar. The Chancellor regards this as the "commencement of the building," and correctly. While it would not be safe to say that, in the view of the legislature, the commencement of the building was the first work done upon the ground toward the erection of the structure, it is both consistent with the language of the statute, and accordant with its evident purpose, to hold that when the permanent work upon the ground, whether of excavation or of construction, has progressed so far as to inform reasonable observers that it is designed for the erection of a building, then the building has commenced. It would be employing language in no unnatural sense for one to say he was engaged in building his house, while in fact he was only digging his foundation or cellar. Even in strictness, the foundation is an essential part of the house, and the cellar belongs to it as completely as does the parlor, and the work necessary to make the cellar or foundation is work done in the progress of the building. True, when the excavation is complete, there is no building on the ground, but there is there, formed by art, that which, when the edifice is finished, will constitute an important part of it. On the other hand, it must be remembered that the legislature has attached to the commencement of the building extensive rights, notice of which is necessary for the protection of those dealing with the land, and as to which there are no means of information provided, except the fact itself. Under such circumstances, the court will not construe the language of the legislature with such strictness as to deprive that fact of its utility. The fact was intended to be notice. The fact must therefore be of such a character as will give notice. The removal of the sod, the turning over of the soil, or such other equivocal acts as would not fairly indicate the purpose to build, do not constitute "the commencement of the building." To satisfy the law, so much must be done, of a permanent character, as will apprise observers that building is in progress. To this extent the work upon this cellar must have progressed before

June 7th. Laborers expending eighteen days of labor, assisted with a horse and cart for twelve days, honestly intending to dig out a cellar for a house, must have so changed the appearance of the ground as to show the purpose of their work. I conclude, therefore, that the building commenced before June 7th.

The next question is as to when the lien of the $60,000 mortgage attached. It bears date May 2d, was acknowledged May 4th, and was recorded in the Union county clerk's office May 13th, 1870, and purports to secure a bond of the same date, May 2d, for $60,000, payable December 31st, 1870. The bond and mortgage, together with other securities, were delivered by the mortgagor, Mr. Dimock, to Mr. Butterfield, for the mortgagee, Mr. Jacobus, on June 7th, 1870, and at the same time, Mr. Jacobus' check for $80,000, of that date, was given by Butterfield to the mortgagor. Mr. Dimock is uncertain as to the date of the delivery. Mr. Butterfield, a witness on the part of the appellant, testifies, "at the time I received them (the bond and mortgage) I gave to Mr. Dimock, to the best of my knowledge and belief, a check of Mr. Jacobus for $80,000." Mr. Jacobus himself testifies, " I think it was Mr. Butterfield handed me the mortgage; we negotiated the loan, and when he handed me the mortgage and stock, I handed him a check for $80,000; I now produce the check, dated June 7th, 1870." So that the date of the delivery of the bond and mortgage, and of the advance of the money upon them, is clearly established as being not earlier than June 7th, 1870, that is, after the commencement of the building. It was indeed recorded before that time, but the mere fact of record cannot constitute that a mortgage or contract which would not be a mortgage or contract without it. Its delivery is the creation of it. Recording may be some evidence of a previous delivery, or the delivery to the officer for record may, by arrangement between the parties, be the delivery to the grantee. *Thayer* v. *Stark,* 6 *Cush.* 11; *Hedge* v. *Drew,* 12 *Pick.* 141; *Parker* v. *Hill,* 8 *Metc.* 447; *Barns* v. *Hatch,* 3 *N. Hamp.* 304.

But in the case before us it is beyond dispute, that until June 7th Dimock had and intended to have entire control of the instruments which he had signed. He placed the mortgage with the clerk for record, and for record merely, and when it was recorded he received it again, and retained it until the check was handed to him. So that it is not possible to infer a delivery to the mortgagee, or any one for him, before that time. Having been recorded before its delivery, it is to be considered as if the mortgagee had procured its record at the date of delivery. *Jones* v. *Roberts*, 1 *L. and Eq. Rep.* 583, (*Maine.*)

But the appellant insists that the lien attached before the delivery of the mortgage and advance of the money loaned, upon the ground that there was a prior arrangement, or at least negotiation for such a mortgage and loan, of which the recording of the instrument was notice to the world, and that, in equity, nobody, after such constructive notice, should be allowed voluntarily to step in and defeat the just expectations of one who had invested his money on the strength of such facts. The validity of such a claim it is not necessary to consider in this cause, for the reason that it is nowhere set up in the pleadings, but is, in fact, inconsistent with the case upon which Jacobus has based his rights in his answer, and to the reality of which he has there sworn. His allegation there is that the bond secured by this mortgage was, on May 2d, 1870, made, executed and delivered to him to secure money then owing to him, and he nowhere suggests that prior to the actual incurring of the indebtedness and delivery of the instruments, any other circumstances existed from which he could derive any equitable rights. A mortgage given to secure money owing, is one thing : a negotiation, accompanied by peculiar conditions, which may entitle a mortgagee to rights prior to his advances and to the delivery of the mortgage, is quite a different thing. Parties must stand upon the case made by their pleadings. Evidence relative to matters not stated in the pleading, nor fairly within its general scope, is impertinent, and cannot be made the foundation of a decree.

The rule is well established, that the court cannot notice matter in support of a case for relief, however clearly proved, of which there is no allegation in the pleadings. *Marshman* v. *Conklin*, 6 *C. E. Green* 546. A defendant who seeks to impeach the prior right of his co-defendant, by reason of some superior equity of his own, can stand in no better position in this regard, than if he were complainant, seeking the same advantage by his bill. His answer must disclose the foundation upon which he rests his claim. In *Vansciver* v. *Bryan* et al. 2 *Beas.* 434, a defendant, Asay, claimed, in his answer, that his mortgage, subsequent in date to Bryan's judgment, was prior in equity, because it was prior to the issue of execution on the judgment. On the hearing, he insisted that he had a superior equitable claim to one-third of the land, because he had advanced one-third of the purchase money with which the judgment debtor had bought it, and that the judgment creditor, Bryan, had known that fact; of the latter claim, however, the learned Chancellor said, even if fully proved, he could not have the benefit under the pleadings in the cause. For this reason, therefore, this claim of the defendant Jacobus must be discarded. I invoke the rule the more willingly, because my investigation of the claim itself has failed to satisfy me of its justice.

I conclude, therefore, that the appellant's $60,000 mortgage is to have effect from June 7th, 1870. His $20,000 mortgage, admittedly, became operative March 18th, 1871.

And it follows that if the lien claimants have taken the proper steps to keep alive their liens, which attached as of an earlier date, between May 28th and June 4th, 1870, the appellant's mortgages must be postponed to them.

The statute creating such liens expressly declares (§ 12), that no debt shall be a lien by virtue thereof, unless a claim is filed as therein provided.

In examining the steps taken to keep alive these liens, it appears that on March 23d, 1873, the respondents, E. F. Purdy & Co., filed, in the office of the clerk of Union county, a claim for $47,979.71 against the building and curtilage,

Jacobus *v.* Mutual Benefit Life Insurance Co.

averring Helen W. Dimock to be the builder and owner, and alleging as follows:

"4. The following is a bill of particulars of the materials furnished and labor performed by E. H. P. & Co., exhibiting the balance justly due them thereon from the said H. W. Dimock:

"NEW YORK, Dec. 31, 1872.

"Mrs. H. W. DIMOCK,

"Bought of E. W. Purdy & Co.

"*Observatory.*

| | | |
|---|---:|---:|
| Trimming 4 double windows, | $310 00 | |
| 90 feet wainscoting, - - | 360 00 | $670 00 |

"*3d Floor, North Side.*

| | | |
|---|---:|---:|
| 14 window trims., 11 door do., all the base this side, - | 375 00 | |
| 30 feet shelving, - - - | 36 00 | |
| 112 shelf bracket mouldings, | 10 08 | |
| Blinds and shutters for 14 windows, - - - - | 285 00 | |
| 11 doors, walnut, - - - | 330 00 | |
| Front room, 1 case of drawers, | 15 50 | |
| 100 feet of Harrad moulding, - | 12 00 | |
| 2d room, 1 washstand and back, | 30 00 | |
| 1 case of drawers, - - - | 36 00 | |
| 3d room, 1 washstand and back, | 30 00 | |
| 1 mantelpiece, - - - | 100 00 | |
| | | $1259 58." |

And so continuing with a list of articles without date, footing up $47,979.71. Among the articles are:

| | | |
|---|---:|---:|
| "Putting up work, - - - - - | $4227 | 71 |
| Voorhis' bill, stepping stairs, - - - - | 1154 | 75 |
| D. N. Smith, embossing glass included, - | 494 | 00 |
| Noel, Samet & Antoine, window plate, - - | 2550 | 00 |
| Russell & Ervin Mfg. Co., hardware, - - | 3991 | 52 |
| Cash paid polishing, after up, - - - - | 575 | 00." |

And concluding as follows:

" All the above labor was performed and materials were furnished between the first day of May, eighteen hundred and seventy-two, and the first day of May, eighteen hundred and seventy-three."

The affidavit made March 20th, 1873, states that the claim is for labor performed and materials furnished since the 1st day of May, 1872.

By a decision in this court, rendered November Term, 1860, it is *res adjudicata* that such a bill of particulars is radically defective: first, in not stating the times when the labor was performed, or any of it, or the times when the different materials were furnished; second, in not showing the amount of labor performed, neither how many days' work were done, nor how much the labor was all worth in gross. *Associates of the Jersey Co.* v. *Davison,* 5 *Dutcher* 415, 421. Clearly then, these creditors have failed to do that, without which, the law expressly declares their debts shall not be a lien.

It is, however, insisted that because, upon this lien claim, judgment has been entered in the Circuit Court, its validity is conclusively established, so long as that judgment stands unreversed. It is one of the principles of the law, " that judgments are conclusive by way of estoppel. 1. Between the parties. 2. Between their privies. 3. On the same subject matter where the proceeding is *in rem ;*" and " that privies are : 1. In blood, as heirs. 2. In law, as administrators. 3. In estate, as lessee to lessor." And by force of this principle, it is claimed that Jacobus is estopped from inquiring into and disputing the validity of a lien claim upon which Purdy & Co. have recovered a judgment against Helen W. Dimock. Jacobus is not a party to that judgment. Is he a privy to the defendant Helen W. Dimock ? He is not a privy in blood nor in law. Is he in estate ? In one sense, he is—he is her mortgagee. But those privies in estate who are bound by a judgment, are not all privies, all persons claiming an estate which was once owned by the party to the judgment; they are only those whose claims

arise after the litigation, that results in the judgment, begins. *Foster* v. *Derby*, 1 *A. & E.* 783.

To extend the class beyond these, would result in the grossest injustice. At the time Jacobus' mortgages were made, not only had the litigation on this lien claim not commenced, but even the debt on which it rests had not been contracted. Jacobus, therefore, is not privy in estate, or otherwise, to the parties in that judgment. Nor was the proceeding *in rem*, so as to conclude all persons by the adjudication therein. The statute provides only for a suit *inter partes*. There are to be plaintiffs and defendants, and upon the defendants is to be served a summons in which are to be designated the individuals who are to appear and defend the suit, and no persons other than those so designated have any right to defend. Such is not the character of proceedings *in rem*. There, notice is given, or, at least, attempted to be given to the world, and everybody is called upon to intervene for the defence of his right, for that the court, which holds in its actual custody the thing to be disposed of, is about to determine concerning that very thing. Its manual possession of the thing is notice to all that have interest in it, and its monition warns all such of its purpose. As the court says, in *Woodruff* v. *Taylor*, 20 *Verm.* 65: "It is just as essential to the validity of a judgment *in rem*, that constructive notice, at least, should appear to have been given, as that actual notice should appear upon the record of a judgment *in personam*; a proceeding professing to determine the right of property, where no notice, actual or constructive, is given, whatever else it might be called, would not be entitled to be dignified with the name of a judicial proceeding. It would be a mere arbitrary edict, not to be regarded anywhere as the judgment of a court."

Says Chief Justice Hornblower, in *N. J. Turnpike Co.* v. *Hall et al.*, 2 *Harr.* 337: "No principle or rule of action is better settled, at the common law, than that whenever a court, or any person acting under legal authority, is to act judicially, or to exercise a discretion in a matter affecting the

rights of another, the party thus to be affected is to have reasonable notice of the time and place when and where such act is to be done, to the end that he may be heard in defence, or for the protection of those rights."

Mr. Justice Trimble, in an opinion which the judges of the Supreme Court of the United States unanimously approved and adopted, (*Hollingsworth* v. *Barbour*, 4 *Pet.* 466,) says : " It is an immutable principle of natural justice, that no man's rights shall be prejudiced by the judgment or decree of a court, without an opportunity of defending the right."

In *Hess et ux.* v. *Cole*, 3 *Zab.* 116, the plaintiffs brought an action of dower *unde nihil habet*, to recover dower of the wife, as widow of S. S. The defendant pleaded a previous assignment of dower by the Orphans Court, through commissioners, pursuant to the statute, upon notice to the wife, and alleging, as excuse for want of notice to Hess, that he had then abandoned his wife, and was living apart from her, out of New Jersey, in some place unknown. The plaintiff demurred, and the court held the assignment void as to Hess, for want of notice to him, and the plea therefore bad, Chief Justice Green saying, in delivering the opinion : " In every proceeding of a judicial nature, it is essential that the person whose rights are to be affected, should be a party to the proceeding, and have an opportunity of making defence."

Upon the same principle, where the land of A was sold, on March 1st, under an execution at the suit of B against A, and on March 10th, a mortgagee of the land filed his bill against A and B, to foreclose the mortgage, and on March 19th, the sheriff executed a deed to the purchaser under the execution, it was held that the deed related back to the time of the sale, and that the purchaser was not precluded by the decree in foreclosure, from contesting the validity of the mortgage in an action of ejectment at law, he not being a party to the bill, and his title having been acquired before the suit began. *Jackson* v. *Dickenson et al.*, 15 *Johns.* 309.

But further references need not be made to maintain this axiom in the administration of justice, whether by courts of

law or equity, that upon no man's rights shall judgment be conclusively rendered until he have opportunity, or at least permission, to be heard thereon. If the legislature could compel the judiciary to administer the law regardless of it, at least the courts should never decide that the legislature has intended so to do, until it has so expressed itself that no other meaning can possibly be attached to its language. Under our lien law, no notice is contemplated except to the persons designated in the lien claim as builders or owners, and no notice to any other persons would be of any avail, since no others are required or could be permitted to defend in the suit. And the act nowhere declares that the judgment to be rendered in the suit shall be conclusive upon any others, as to the existence of a lien, and it therefore seems to me indisputable that the legislature did not intend to give, and did not give, to the judgment any such effect. Nor do the decisions upon this or similar statutes warrant such an interpretation.

Under the mechanics' lien law of Maryland, provision is made for summons to the defendants named, and also for public notice, by advertisement, to all concerned. In a suit under that act, the giving of the latter notice was waived by counsel of plaintiffs and defendants, and judgment was recovered by the plaintiffs. Afterwards, on foreclosure of mortgages, the plaintiffs insisted that their judgment was *in rem*, and concluded the mortgagees as to the validity and effect of their liens; that as the county court had jurisdiction to render the judgment, and the omission to give the notice was a mere irregularity, no court, in a collateral proceeding, could, for that reason, refuse to give it full effect. The Chancellor said, however: "The question is not whether the judgment shall have effect against the parties who were notified of the proceeding, but whether it shall conclude persons who had no notice, either actual or constructive, and who consequently have had no opportunity of defending their rights. It appears to me quite plain that the legislature never intended, in passing these laws, to affect the interests of parties who had no notice, actual or constructive, of the proceedings under them;

and I am by no means prepared to say, that if the person claiming the lien chooses to limit his remedy to the defendant and the person in possession of the building, he may not do so. Surely, it would be everywhere, and with one voice, denounced as violative of the plainest principles of justice, that the rights of parties should be concluded by a judgment, when they were not only not summoned to resist it, but where they had not, and were not intended to have notice.  *   *   * It cannot be allowed to conclude the rights of strangers to it. *   *   *   The proceedings under the lien law, though in the nature of proceedings *in rem*, are not purely of that character. The suit is *inter partes*, and must be confined to such parties. *   *   *   It cannot, with any propriety, be said that the judgment is an adjudication affecting the mortgagee's title to the property." *McKim et al.* v. *Mason et al.*, 3 *Md. Ch.* 186.

The statute of California requires the lien claim to be filed within sixty days after the completion of the work.  In *Horn* v. *Jones et al.*, 2 *Cal.* 194, the mechanic had filed his claim against the owner after the sixty days had expired, and upon that claim judgment had been entered by him, and execution issued, and the property sold.  It was held that a mortgagee whose mortgage had been made and recorded after the work commenced, and before the claim was filed, had a right superior to that of the purchaser at the execution sale, and that he was not bound by the judgment, although if the lien proceeding had accorded with the statute, he would have been cut off.

So, in *Cornell* v. *Matthews*, 3 *Dutcher* 522, Whelpley, J., speaking of a special judgment under our lien law, says : "The judgment can bind the estate of no one not a party to it."

To the same effect is the opinion of Chancellor Green, in *The Morris County Bank* v. *The Rockaway Manufacturing Co.*, 1 *C. E. Green* 150, where he says : " The claim was not filed according to the statute, and constitutes, therefore, under the provisions of the law, no encumbrance upon the premises. Nor does the fact that judgment at law is entered upon the lien, the lien claim not having been filed pursuant to the statute, give it any priority in payment, or advantage over

Jacobus v. Mutual Benefit Life Insurance Co.

liens upon which judgment has not been rendered. The order of priority of encumbrances is in no wise affected by the judgment to enforce the lien."

It was mainly by reasoning upon the same fundamental principle, that this court reached the conclusion in *Derrickson* v. *Edwards*, 5 *Dutcher* 468, that the owner who is to be made defendant to suits under our lien law, is he who stands in that relation, not when the building begins, but when the lien claim is filed, when first a record is made to which the subsequent proceedings to enforce the claim must conform, and after which there may be said to be *lis pendens*. *Robins* v. *Bunn*, 5 *Vroom* 322. From this premise, one logical conclusion seems to me to be that all those persons who, as mortgagees, at that time own any interest in the land which the lien claimant desires to subject to his lien, must be made defendants, as owners, else their estate will stand exonerated from the lien. The statute says that the claim shall designate the name of the owner of *the estate in the land* upon which the lien is claimed; and by what course of reasoning can it be asserted that he who owns the mere shell, as it were, of the estate, must be afforded opportunity of contesting the claim, before it is conclusively established, but that he who owns the kernel, the substance of that estate, may be passed by unnoticed, unheard? As in the case before us, before all the lien claims in controversy were filed, Dimock and his wife, who were the owners of the land when the building began, had conveyed to Jacobus, by way of mortgage, all that they had of value in the property (for it doubtless is not worth the mortgage money), vesting in him that which courts of law long regarded as the legal estate, and afterwards had transferred to Rowand their equity of redemption, a mere shadowy remnant of interest; and yet it is said the legislature has required that Rowand shall be solemnly called to answer before judgment can be pronounced against his rights, but has considered Jacobus' interests as not worth the trouble of asking or permitting him to appear for their defence. Such a scheme may form part of some theory for administer-

ing law, but it ignores those rules without which practical justice would be generally thwarted, and cannot, in my opinion, be drawn out from either the enactments of the legislature or the decisions of the courts.

It is not, however, now necessary to decide that the lien which Purdy & Co. once had against the estate of Jacobus as mortgagee, is absolutely lost by reason of their failure to file a claim against him as owner within the year allowed by the statute: it is enough to hold that he is not prevented, by the judgment against others, from averring that no claim, according to that statute, has been filed against anybody, and that, therefore, as to him, by force of the express provisions of the law, the lands and building are free from the lien. And this position, be it noticed, he is assuming, not against one who, on the strength of that judgment, has bought the land and paid his money for it, but against the lien claimants themselves, by whose own fault their own rights are affected. The claim of Purdy & Co. must, I think, be postponed to the Jacobus mortgages.

The two other lien claims in the case, that of Thompson and that of Warner, were filed against only Joseph T. Rowand, as owner, after the property was conveyed to him. The conveyance to him was made by Mr. and Mrs. Dimock after they had executed both Jacobus' mortgages. Without adverting to defects apparent on the face of these lien claims, I think their status as to Jacobus may be satisfactorily determined upon other considerations. The portions of the act which describe the estate to be affected by sale under the special judgment and execution, are the eleventh section of the original act and the first section of the supplement of March 14th, 1863. These sections provide that on such sale, the sheriff's deed shall convey to the purchaser the estate of the owner in the building and lands, subject to all mortgages or other encumbrances created and recorded or registered prior to the commencement of the building, and free from all encumbrances or estates created by or obtained against such owner afterwards, and from all estates and encumbrances, by deed

or mortgage, made by such owner or any claiming under him, and not recorded or registered at the commencement of the building. This is the extent to which the lien can be made available, even in favor of a purchaser, and doubtless, therefore, in behalf of the claimant himself, the lien has no wider reach. It embraces only the estate of the owner named in the judgment, cutting off only encumbrances obtained against him, and estates by deed or mortgage made by him or those claiming under him, after the commencement of the building. In the Warner and Thompson claims and judgments, the owner named is Rowand, and all the estate which can be reached thereunder is the estate which he owned at some period contemplated by the statute. But he never owned that estate which Jacobus has under his mortgages. Nor is Jacobus' estate or encumbrance one created by or obtained against Rowand, or existing under deed or mortgage made by him or any claiming from him. It is not included within any terms of the act used to describe the property subjected to sale under a judgment against Rowand. Had Helen W. Dimock been the defendant, as owner, and the proceedings been according to the statute, some color might be found in these terms for holding that the estate of Jacobus could be sold, because she owned that estate at the commencement of the building, but not as the matter now stands. When the lien claimant is selecting the owner against whom he will prosecute his claim, he must take care that he chooses one whose estate is or has been extensive enough to satisfy that claim. These claimants, having elected to proceed against the estate of Rowand only, can ask no more than such estate as Rowand had, and, therefore, they also must be postponed to the Jacobus' mortgages.

So much of the decree below as adjudges the lien claims and judgments of Purdy & Co., Thompson, and Warner, to be prior to the mortgages of Jacobus, and provides for their payment accordingly, should be reversed ; in other respects, the decree should be affirmed.

VAN SYCKEL, J.

My conclusions in this case are as follows:

1. I agree with the opinion of Judge Dixon as to what constitutes the commencement of a building.

2. That the evidence shows that the building was commenced before the 7th of June, 1870.

3. The mortgage to Jacobus was executed and put on record by the mortgagor before the 6th of June, but it was not delivered to Jacobus, nor was the money advanced upon it, until after that date. Under these circumstances, it did not take effect as a mortgage to Jacobus until it was delivered, and the doctrine of relation cannot be invoked to give it priority over the lien claims. The fact that the mortgagor had the mortgage recorded before its delivery, was notice to any subsequent encumbrancer that, when delivered, the mortgagee would take it according to its legal effect, that is, as a mortgage from the date of its delivery to him; while in the hands of the mortgagor it constituted no lien. The building having been commenced before the delivery of the mortgage, the mortgagee was charged with full notice, before he advanced the money on the mortgage, that if he did so advance his money, he would take a mortgage of a date subsequent to the commencement of the building, and be postponed to any lien claims which might accrue in the erection of the building.

4. Even if the mortgagee could claim a superior equity by relation, in this case, he cannot now be permitted to set it up, having claimed priority, in his sworn answer, on an entirely different ground.

5. The judgment at law upon the lien claim, in the absence of fraud or collusion, is conclusive against all encumbrancers subsequent to the commencement of the building. It is contrary to the common law rule that a judgment binds only parties and privies. A mortgagee, of a date subsequent to the commencement of the building, has notice in the express terms of the statute, not only that he will be postponed to every lien claim, but that he will be concluded by a judgment in a suit on the claim, to which he is not to be made a party.

The result is that, in my opinion, the decree of the Chancellor should be affirmed.

Decree reversed by the following vote:

For reversal—DEPUE, DIXON, GREEN, KNAPP, LILLY, WOODHULL.   6.

For affirmance—BEASLEY, C. J., CLEMENT, REED, SCUDDER, VAN SYCKEL.   5.