Kent, Ch. J.
This is an appeal from a decretal order of the court of chancery, establishing the right of the respondent to have his debt satisfied out of the mortgaged premises, notwithstanding the sale to one of the appeliants.
*519 When Siagg took his mortgage from Shelden, on the 6th of May, 1795, the only interest (if any) which Shelden had in the premises, was as assignee of Wastiburn. What was the extent or duration of Washburn's lease does not' appear, and the respondent has not stated the evidence or representation of title which led him to accept of the mortgage. As we know nothing of the contents of Wash-hum's lease, nor whether it had or had not expired on the 6th of May, we cannot well take into consideration any supposed interest under that lease; for de non apparentihus et de non existentihus eadem est ratio. All that the parties have disclosed to us is, that Shelden had been in possession of the lot from March preceding; and that Washburn, as prior lessee of the lot, had assigned his lease to him, and that some time previous to the 1st of August, Murray had made an agreement with Shelden, to give him a new lease, in his own name, and that the same was executed on the 1st of August, for 19 years and 9 months, and that Shelden had paid the rent to Murray, from the 1st of May. If we were to draw any inference from these facts, relative to Washburn's lease, a probable one would be, that the lease expired on the 1st of May, 1795; that Shelden and Murray had made their agreement for the new lease, prior to the 6th of May, and that the mortgage to Siagg, which was by way of lease for 20 years, was made and accepted upon the strength of that new agreement.
If this was the real truth of the transaction, the mortgage would, undoubtedly, as against Shelden, include the interest conveyed by the lease of the 1st of August. A conveyance will, in many cases, be deemed to relate back to the time when the-agreement for it was concluded, and render valid any intermediate disposition of the land. (Jackson, ex dem. the loan officers of Rensselaer, v. Bull, April term, 1799.) If this was now a question at law between Siagg and Shelden, I believe it would not be *520 doubted," that the lease of the 1st of August, 1795, related back to the time of the agreement made with Murray, and that the agreement would be carried back to the 1st of May, so as to protect and make valid the mortgage to Stagg. If, on the other hand, we were to admit that Washburn's lease was for an existing term of 20 years, and that the mortgage was founded upon that lease, and intended to have been co-extensive with it, and that the new lease was given for the same term, and was nothing more than the substitution of the name of Shelden for that of Washburn, yet this act would by no means affect the respondent. It would be deemed the same continued interest, as respects the rights of Stagg, for it was notin the power of Shelden, by the surrender of the old, and the acceptance of a new lease, to defeat the effect of the previous mortgage. So that, upon either supposition, quacunque via data, the claim under the mortgage would be conclusive, as against Shelden, the mortgagor.
But this is a contest between Stagg, and a subsequent bona,fide purchaser; and it is contended, that the appellants do not stand in the place of Shelden, but on higher and firmer ground, and are entitled to full protection against this antecedent encumbrance. The solidity of this pretension is the point which we have to discuss and decide.
In the first place, there was a suggestion of'fraud or collusion between Stagg and Shelden, to the injury of Mrs. Johnson,- but nothing of this kind was made out in proof, and the mortgage is shown to have been given bona-fide, and for a valuable consideration. Though it be admitted, that there are circumstances in the case which might lead us to favour, as much as possible, the title of Mrs. Johnson, as being an innocent purchaser, who had, the day before, searched the records, yet as no testimony warrants the charge of fraud, it is impossible for this court to make that conclusion, because it would be unjust to *521 vary the rights of the parties on mere surmise and conjecture. The charge was only suggested, and not urged, by the appellants’ counsel, and it is our duty wholly to abandon it.
It is again said, that as Stagg, the mortgagee, left the new lease after the 1st of August, or left Washburn’s lease at the time, in possession of Shelden, the mortgage became void as against a subsequent purchaser, without notice, because, by leaving the lease in possession of Shelden, he left with him the means to impose upon strangers who might have, no knowledge of the encumbrance. But there is no evidence that Stagg knew of the actual execution of the new lease at the time it was made; and if he had known of it, he had no means to obtain the possession of it, as he had advanced this money, and taken his mortgage some time before. If, however, that lease had been in esse, when the mortgage was given, I am of opinion, it would not have been requisite for Stagg to have taken possession of it; and that the English law requiring the mortgagee to receive the title-deeds as a deposite, does not apply here. As this is an important question in itself, and the determination of it, perhaps, decisive in the present cause, I must beg the patience of the court, while I bestow on it a more particular attention.
The reason of the English rule is, to protect subsequent purchasers and mortgagees, because, by leaving the title-deeds with the mortgagor, the mortgagee enables him to commit a fraud. (2 Cruise’s Digest, 202.) Our statute, for the registry of mortgages, is a valuable and salutary substitute for the English practice of depositing the title-deeds, and it has effectually secured subsequent purchasers and mortgagees from all such mischief. But the point in dispute, in the present case, is, whether this act applies as well to mortgages of leasehold estates, as of estates of inheritance and for life. The words of the statute are, mortgages of any lands, tenements, and heredita *522 merits.' I admit that, by the old rule of law, those words would comprehend only freehold estates, and not leases for years. (Bro. Tit. Done, 41.) The ancient idea of the dignity of the freehold, and of the small and insignificant value of a term for years, may, possibly, have led to the establishment of this rule; for the common law, prior to the statute of Gloucester, (6 Ed. 1.) looked upon a term as of no value, and afforded no protection to the interest of the termor against the tenant of the freehold. (2 Inst. 321.) So in the case of Rose v. Bartlett, (Cro. Car. 292.) it was held, that a devise of all one’s lands and tenements will carry only the freehold estate, provided the testator owned at the time, fee-simple lands, and a lease for years ; but that if he owned only the latter, then the lease for years would pass by the devise. This case is considered, at this day, as law, in England; but Baron Eyre, in the case of Turner v. Husler, (1 Bro. C. C. 79.) expressed his dissatisfaction at this old rule, and observed, that the inducements to the establishment of it had ceased, for that circumstances had now changed the value of leasehold estates, and that the words in the devise were large enough to include that species of estate.[*] The decision is only adhered to, in England, for the sake- of a uniform and stable rule of construction, and this is, undoubtedly, a good and sufficient reason, in that particular instance; but it does not follow, that the words lands and tenements must receive the same restricted construction, when found in a recent statute, introducing regulations on a new subject. The words, as Baron Eyre observed, are lai’ge enough to" reach an interest for years, as well as an estate for life, as they are both equally portions of interest carved out of the fee. In Rose v. Bartlett, it was agreed, that the words would extend to leases for years, if the testator possessed no higher interest on which they might operate. In the very modern case of Doe v. Williams, (1 H. Black. 25.) it was held, that the words lands *523 and meadows would, even in a'deed, which is construed much more strictly than a will, pass a lease for years. These cases prove, then, that the words lands and tenements may, in certain cases, either in a deed or will, comprehend an estate for years; and I think it will be admitted, that a mortgage of a term for years, is within the reason and spirit of the registry act, because it is equally within the mischief, for which the remedy by the statute was provided. Without a registry of such mortgages, or without a deposite of the lease, it is agreed, that subsequent purchasers and mortgagees are exposed to frauds,- and the registry of the mortgage appears, to me, to be the preferable, because the most convenient and certain mode, of giving notice of the mortgage to all the world. The statute of 32 Hen. VIII. against selling pretended titles, speaks of any tight or title to any lands, tenements, gr hereditaments ; yet it was held, in the case of Partridge v. Strange & Croker, (1 Plowd. 87.) that a lease for years was a title within the act, because it was within the mischief guarded against. I conclude, therefore, that the mortgage, in the case before us, ought to be considered as coming within the registry act, and that it was, consequently, duly registered on the 14th of September, 1795.
Having considered this point, the next question is, whether the registry of a mortgage is not, in judgment of law, notice of such mortgage to all subsequent purchasers and mortgagees. This, I think, must be considered as a clear proposition. The provision in the act, that no mortgage, unless duly registered, shall defeat the title of a bona fide purchaser, shows the intent of the law to be, that subsequent purchasers must take notice, at their peril, of all registered mortgages. This has been the received construction, and, probably, the universal understanding on the subject.
With these propositions before us, how stands the equity of the claim of the appellants? Mrs. Johnson pur *524 chases the lease of Shelden, with notice of Stagg's mort-g'a8’e- I mean not that she had actual notice, but that the law charges her with notice, because the mortgage was registered the day before the purchase. Knowing . ...... , of the mortgage, she must have perceived, that it embrace,j precjse]y the same period of time, and the same quantity of interest, that were included in the lease, and that if her purchase was valid and absolute, she effectually destroyed the mortgage. Taking the lease, with notice of the mortgage, she became subject to all the equity that existed in favour of Stagg, against Shelden, and precluded herself from setting up any defence which would not have been equally valid in the mouth of Shelden. If she could hold her purchase, she would enable Shelden to commit a fraud, by defeating Stagg of his security. -This a court of equity will never permit a purchaser, with notice, to do. It is a settled and sound principle, that a prior equitable lien will prevail over a subsequent purchase of the legal estate, if such subsequent purchaser be affected with notice. (Amb. 678. 2 Term, 490. Ashhurst, J.) This is the hinge on which the equity of this case turns.' If we establish that a mortgage for a term of years is within the registry act, and that the registry of this mortgage is equivalent to actual notice, we go far towards putting an end to this cause. The claim under the mortgage, which would be conclusive against Shelden is equally so against his assignee, with notice of that mortgage. Legal or constructive notice is here sufficient. Actual notice is, in many cases, required under the English registry acts, but' those are eases which go to devest a party of his priority, by charging.him with fraud. Here the prior ity is in favour of Stagg, as he had his mortgage registered before the purchase; and the negligence is on the part of the appellants, as the records ought to have been searched at the time of the conveyance, and so they would have been, by a truly vigilant purchaser. Nothing *525 but actual fraud ought to devest Stagg of his priority and preference in this struggle. Constructive notice, by means of the registry, is decisive, that the subsequent purchaser knew of the mortgage, and must be bound by the equity attached to it. (a) Any other construction would be truly mischievous, as it would defeat the end of a most beneficial statute.
I am accordingly of opinion, that the decretal order below ought to be affirmed, and the cause remanded.
This being the unanimous opinion of the court, it was thereupon ordered, adjudged, and decreed, that the decree of his honour the chancellor be affirmed, with costs; and that his honour the chancellor cause the mortgaged premises to be sold for the satisfaction of the debt and interest, which shall be found due to the respondent, on the said bond and mortgage, with his costs in the court of chancery, and in this court; and (hat the surplus, if any, arising from such sale, be paid to the appellants, and that the proceedings be remitted, &c.
Judgment of affirmance.

 It is not necessary, within any of the registry acts, that the assignment of a mortgage should be recorded. The recording of such assignment is not notice to a mortgagor, so as to render payments by him to the mortgagee in his wrong. 2 Cowen, 246.