## THE STATE OF IOWA,

BURLINGTON, MAY TERM, 1852.

In the sixth year of the State.

————•○○————

PRESENT:

HON. JOSEPH WILLIAMS, CHIEF JUSTICE,
" JOHN F. KINNEY, } JUDGES.
" GEORGE GREENE, }

————○○————

## CAVENDER *v.* SMITH.

In purchasing land from the United States, the party acquires absolute title from the date of the purchase or land office certificate ; and from that date the land may be sold by the purchaser, and is as subject to judgment execution and sale before the date of the patent as it is after.

A government patent for land relates back to the date of the purchase, and is evidence of title in the patentee from the date of the certificate of purchase, and not from the date of the patent.

Land held under a certificate from any land office subject to execution.

Land office receipt or certificate made evidence of legal title, by statute.

Title acquired under execution sale cannot be defeated by execution defendant, on the ground that his patent for the land bore date subsequent to the sale.

ERROR *to Des Moines District Court.*

*Opinion by* GREENE, J.  An action of right by John
Cavender against Jeremiah Smith for the west half of the
south-east quarter of section six, in township sixty-nine
north, range two west.

The plaintiff gave in evidence the duplicate of the reg-
ister of the Fairfield land office, which certified that the
land was purchased from the government of the United
States, January 16, 1840, by Jeremiah Smith. He also
introduced to the jury a judgment of the district court of
Des Moines county, rendered on the 17th February, 1840,
for the sum of two hundred and thirty-four dollars, in favor
of Smith Brothers & Co., against said Smith. He then
read in evidence an execution issued on said judgment,
with the levy and return; and also a deed from Cameron,
sheriff, dated June 13, 1841, conveying the land in question
to James W. Grimes, by virtue of said execution; also a
deed dated October 28th, 1843, from J. H. McKinney, the
then acting sheriff of said county, which was executed by
virtue of the same execution to said Grimes; and also a
deed from said Grimes to the plaintiff, dated May 31, 1843.
He also gave evidence to show that Smith was in posses-
sion of the land at the commencement of the suit.

It appears that the defendant then offered in evidence, by
way of defence and to show title in himself, acquired since
the judicial sale of the premises, a patent from the United
States for the land in controversy. The patent is dated
December 1, 1841. To the introduction of the patent for
that purpose the plaintiff objected, but the court permitted
it to go to the jury as evidence, and instructed the jury that
the patent shows the legal title to the land in question was
in the defendant at the commencement of the suit; and that

the legal title must prevail over all others in this action. Thereupon the jury returned a verdict for the defendant.

In admitting the patent for the purpose specified and in giving the instruction to the jury, it is contended that the court below erred. In deciding this case it may be well to inquire what rights were acquire by the execution purchaser under the judgment and sheriff's sale. He could acquire no greater right than was vested in the judgment debtor. Before judgment was rendered against him Smith had pur-chased the land from the United States, and had obtained the usual receipt or certificate of purchase. By this pur-chase he acquired all the property which the United States had in the land. There was no reservation made. The sale was unconditional; the right acquired was absolute. All the equity, and in fact the legal title passed from the gov-ernment to the purchaser. The government retained only the formal—the merely technical legal title in trust for the purchaser until the patent issued. This view is fully sus-tained in *Carroll* v. *Safford*, 3 Howard U. S. 441, 460. In that case the court held that, "where the land was purchased and paid for it was no longer the property of the United States, but of the purchaser. He held for it a final certifi-cate, which could no more be cancelled by the United States than a patent. It is true if the land had been previ-ously sold by the United States or reserved from sale, the certificate or patent might be recalled by the United States, as having been issued through mistake. In this respect there is no difference between the certificate holder and the patentee." This decision also holds that the land so pur-chased is, before the patent issues, real estate in the hands of the purchaser; that it descends to his heirs, and does not go to his executors or administrators; that "in every legal and equitable aspect it is considered as belonging to the realty;" and that such lands may be taxed as real estate, "as lands owned by non-residents." The opinion distinctly declares that lands which have been sold by the United

Cavender v. Smith.

States can in no sense be called their property. So far as the property and the rights of the purchaser are concerned, they are as fully protected under the certificate as they can be under the patent. Having once sold the land by certificate to one, the officers of government could not sell it again and convey a good title to another, even by patent. In reality the purchaser was vested with the entire ownership by his certificate, and therefore, the patent could not invest him with any additional property in the land; it only gave him better legal evidence of the title which he first acquired by certificate. When he paid the purchase money to the receiver of the land office he had performed on his part all that was required, by the conditions of sale, to perfect his purchase, and he at once acquired all but the mere evidence of a technical legal title which was retained by the United States in trust for him till the patent could be issued. The purchaser could sell and convey the land as completely before he obtained the patent as he could after. And such was the right of Jeremiah Smith to the land in question, at the time of the sale under the judgment execution and sheriff's deed. The entire subsisting interest of Smith, passed by that sale to Grimes as completely as if the transfer had been by voluntary conveyance. But it is contended that the legal title subsequently acquired by Smith, when he obtained the patent from the United States, did not inure to the purchaser as it would have done if the conveyance had been voluntary. We have already noticed that Smiths right to the land, in substance and in fact, resulted from his purchase and not from the patent which was subsequently issued, and that the patent was only legal evidence of that right. It follows, therefore, that the patent could not be in conflict with the right, but rather contributed to its support and confirmation. Smiths property in the land and his right to the patent, as evidence of that property, were simultaneously acquired by the same purchase. The consideration money which secured the

Cavender v. Smith.

certificate gave him, at the same time, a right to the patent. As emanations from the same source, the relation between them cannot be legitimately severed. They come from the same purchase, they convey the same property, contribute to the same object, and the one must relate back and perform the other. In what respect, then, can they be regarded as antagonistic? The fact that the patent bears date long subsequent to the certificate of sale, is no evidence of a subsequent purchase. On the contrary, it purports to have issued by virtue of the prior sale, payment and register's certificate. There could have been no subsequent purchase from the government after a valid sale, and consequently no subsequently acquired property, nor even a subsequent evidence of legal title, but such as related back to the regular purchase, and must inure to the grantee under the sheriff's deed.

If a patent issued to the execution defendant subsequent to the sheriff's sale, could be set up as evidence of subsequently acquired title in such defendant, for the purpose of defeating the sheriff's deed, it is obvious that title could not be acquired by judicial sale of lands held by a land office certificate, and thus the statute authorizing the sale of such lands would be defeated, and execution purchasers deprived of their rights. The execution law, under which the land in question was sold, expressly declared that lands under a certificate from any land office should be subject to execution. Laws of 1858–9, p. 197. It was argued, and will not be disputed, that a patent is paramount to a register's certificate, and a better evidence of legal title in the patentee. But this rule has no bearing upon the present case. There is no conflict between the two; they establish the same title. And under the statute of 1842, p. 38, the usual duplicate receipt of the receiver or the certificate of the register of the proper land office, is made sufficient *prima facie* evidence of title, or of right of possession in actions of trespass, actions of right, or other actions at law or

equity, and such a receipt or certificate is declared to have the same effect in establishing a possession at law as is given to a deed of conveyance or patent. Under this statute a receipt or certificate is made evidence of title in an action at law, and in establishing a possession it has the same effect as a patent. Thus additional importance is given to land office receipts and certificates as evidence of legal title, in which they have the same effect as a patent, and virtually vest the conclusive legal title in the purchaser from the date of the certificate.

But, independent of this statute, the admission of the patent for the purpose specified and the instructions given in relation to it, were manifestly erroneous upon the doctrine of relation, which is clearly applicable to the case. This must appear incontestable under the rule in 5 Cruise on Real Prop. 510, 511, "that all the parts and ceremonies necessary to complete a conveyance, shall be taken together as one act, and operate from the substantial part by relation." This "substantial part" is recognized in Vin's Ab. tit. Relation, 291, as "the original act" which is to be preferred, and to this, all subsequent acts are to have relation. This doctrine of relation appears to have been often applied to the adjudication of real actions by American courts.

In *Johnson* v. *Stagg*, 2 John. 510, a lease for nineteen years and nine months, executed August 1, 1795, pursuant to a prior parole agreement for a lease of twenty years, was considered as relating back to May 1, so as to make valid a mortgage executed by the lessee on the 6th of May, 1795. The opinion in the case by Kent, C. J., declares that a conveyance will, in many cases, be deemed to relate back to the time when the agreement for it was concluded, and render valid any intermediate disposition of the land.

In *Jackson* v. *Dickinson*, 15 John. 309, the land of A. was sold under an execution at the suit of B. on the first of March, and on the tenth a mortgagee of the land filed a

bill of foreclosure against A. and B., and on the nineteenth a sheriff's deed was executed to the purchaser; and it was held that the subsequent delivery of the deed was mere matter of form, and must have relation back to the time of sheriff's sale; and that the purchaser's title was acquired before the bill was filed; and that he might contest the validity of the mortgage in an action of ejectment.

A grant by the proprietary of Maryland of escheat land relates back to the original grant, and where such grant covered lands in which he had a reversionary interest, it will operate to pass such interest. *Howard* v. *Moale*, 2 Har. and J. 249.

It was held in *Jackson* v. *Ramsay*, 3 Cowen 75, that a deed given by a sheriff upon a previous sale on execution relates back to, and in judgment of law, is executed at the time of sale.

This doctrine was also recognized in *Jackson* v. *Bull*, 1 John. Cas. 81; *Case* v. *De Goes*, 3 Caine 262; *Jackson* v. *Bard*, 4 John. 234; *Heath* v. *Ross*, 12 ib. 140. The same rule prevailed in *Rogers* v. *Brent*, 5 Gilman 573. In that case the judgment was recovered against A., while he held land under his certificate of entry from the United States. The land was sold on execution. After the sale, and before the time of redemption expired, A. assigned his certificate of entry to B., who obtained a patent from the United States and then conveyed the land to C. In ejectment, brought by C., it was held that the sheriff's deed related back to the judgment, and made a complete transfer of A's title; that the assignment from A. to B. only passed the right of redemption, and as this right was not exercised, the assignment to B. was void and the patent issued upon it fraudulent, and conveyed no title to the patentee against the claimant under the sheriff's deed.

The same principle has been repeatedly enforced in the supreme court of the United States, and carried to a much greater extent than is necessary in the adjudication of the

present case. In *Stoddard* v. *Chambers*, 2 Howard 316, a concession was made to B. in 1800; in 1804, B. quit-claimed to M., and in 1805, M. quit-claimed to S. The claim was filed with the board of commissioners in 1808, and confirmed to B. and his legal representatives in 1836. It was held that the legal title was vested in B., and inured by way of estoppel to his grantee and' those who claimed by deed under him. And in *Bissel* v. *Penrose*, 8 How. 317, the same principal was maintained.

But the case of *Landes* v. *Brant*, 10 How. 348, broadly asserts the doctrine of relation, and clearly settles every point raised in the case at bar. In that case a Spanish claim of land was acquired by Clamorgan under Dodier, the original claimant, by virtue of ten consecutive years possession prior to December 20, 1803. Such claim was authorized by act of congress. Clamorgan was entitled to a patent by virtue of a certificate of confirmation made by commissioners Nov. 13, 1811. His petition for such confirmation was filed in December, 1805. In 1808 judgment was recovered against Clamorgan, the claim was sold and a sheriff's deed executed to McNair. It was held that the execution sale passed to the purchaser all the title that could have passed from C. to M. by a quit claim deed; that " applying the doctrine of relation and taking all the parts and ceremonies necessary to complete the title together *as one act*, then the confirmation of 1811 and the patent of 1845 must be taken to relate to the first act; that of filing the claim in 1805. On this assumption, intermediate conveyances made by the confirmee or by the sheriff on his behalf, of a date after the first substantial act, are covered by the legal title and pass that title to the alienee. And on this ground the deed made by the sheriff to McNair is valid."

Under these views and authorities, we think no doubt can be entertained that the court below erred in admitting the

patent and in giving the instructions, as set forth in the statement of this case, to defeat the sheriff's deed.

*H. W. Starr* and *J. C. Hall*, for plaintiff in error.

*David Rorer* and *M. D. Browning*, for defendant.