MARY M. L. MORGAN ET AL. *v.* HAZLEHURST LODGE ET AL.

1. DEED.   *Void if to dead person.*

Where in the premises of a deed A. is stated to be party of the first part, and M. party of the second part, the *grant* and the *habendum* being to M. and his heirs, if M. is not *in esse* at the time of the execution of the deed it is void.

2. EJECTMENT.   *Outstanding title.   Common source.*

In ejectment, where both parties deraign title from a common source, the defendant cannot set up an outstanding title with which he has no connection, but if he has obtained the outstanding title he may set it up.

3. SAME. *Common source. Equitable title.*

Where the parties in ejectment deraign title from a common source, either party may show whether in the common source the title was legal or equitable.

4. ADMINISTRATOR. *Probate sale. Equitable estate of decedent.*

An administrator may sell at probate sale the real property of his decedent, though the title of the decedent be equitable, and the administrator's deed operates as an assignment to the vendee of such title as the decedent had in his lifetime.

5. PROBATE SALE. *Purchaser. One year's limitation against heir. Construction of § 2173, Code.*

A purchaser at probate sale prior to 1871, who has been in possession of the land for more than a year after 1st October, 1871, before suit, can successfully plead the bar provided by § 2173, Code 1871, to an action of ejectment by the heir to recover the land.

6. SAME. *Code 1871, § 2173, covers all defects in sale.*

The statute was meant to cure all defects in the probate sale, no matter from what cause, whether before or after decree, unless the heir brought his action within the prescribed time.

7. SAME. *Applies to bill in chancery.*

The one year's limitation provided by Code 1871, § 2173, would apply to a bill in chancery by the heir, where the ancestor had but an equitable title.

8. SAME. *Purchase must be in good faith and money paid.*

If the sale was not in good faith, or the purchase-money has not been paid, the action is not governed by § 2173, but by the general Statute of Limitations.

9. SAME. *Meaning of " good faith."*

The words " good faith " in § 2173, Code 1871, are used in their common and popular acceptance, and not in their technical sense. They are used here as the antithesis of *mala fides,* as they are used in the statute allowing compensation in ejectment for permanent improvements, explained in *Cole* v. *Johnson, ante,* 94.

10. SAME. *Adverse possession necessary.*

Unless there has been a disseisor in possession of the land, claiming under the probate sale, for the time prescribed in § 2173, Code, the ejectment by the heir is not barred.

11. SAME. *Other essentials.*

To bring a case arising on a probate sale, made prior to the Code of 1871, within the bar prescribed by § 2173, parties who claim title by devolution as heirs, must bring an action to recover property on the ground of the invalidity of the sale.

ERROR to the Circuit Court of Copiah County.

Hon. URIAH MILLSAPS, Judge.

This was an action of ejectment, brought in 1873, by the widow and heirs of Thomas S. Morgan, against the officers and members of Hazlehurst Lodge, and others, to recover a lot in the town of Hazlehurst. The landlord, Mrs. M. Faler, having come in, and been made a party defendant with the tenants sued, a plea of the general issue was interposed.

The plaintiffs read in evidence on the trial the record of a proceeding in the Probate Court of Copiah County, showing the petition of W. M. Haley, administrator of Thomas S. Morgan, to sell the lot in controversy to pay debts; the decree for sale made 6th July, 1869; the report of sale thereunder, at which Mrs. M. Faler became the purchaser; and the confirmation of the sale. The plaintiffs then read in evidence the record of a proceeding on the probate side of the Chancery Court, in 1872, like the former, made to perfect title in Mrs. Faler; under which the same lot was again sold by Haley, the administrator, and Mrs. M. Faler again became the purchaser. The plaintiffs then read in evidence two deeds made by Haley to Mrs. Faler, — one in 1869, under the first sale, and the other in 1872, under the second sale. The first of these decrees of sale appears, from want of notice to the heirs, to be fatally defective; and the second sale was made without a bond to apply the proceeds. The plaintiffs introduced them with the statement that they were to show a common source of title, and that the plaintiffs were not barred by § 2173, Code of 1871; and with the admission by the defendants that the plaintiffs were the widow and heirs-at-law of Thomas S. Morgan, deceased; and some proof to show the administrator's sale in 1872 was void for combination among bidders. The plaintiffs rested their case.

The defendants proved, by W. M. Haley, that Thomas S. Morgan had never been in possession of the lot in controversy; that Mrs. Faler bought at the sale in 1869, in good faith, and paid for the lot, and in 1870 began to occupy it, and improve it with permanent, valuable, not ornamental, improvements, $8,000 in value. To the evidence as to the improvements the plaintiffs objected, on the ground that she was not a *bona fide*

purchaser. The objection was overruled, and the plaintiffs excepted. Mrs. Faler continued in possession until this suit was brought, and so continues now. On cross-examination, the plaintiffs proved by this witness, that among Thomas S. Morgan's papers, after his death, the witness found a bond for title to this lot by Wirt Adams to Morgan; Morgan had paid one-half; the witness paid the balance, and took a conveyance.

The defendants then offered a tax deed to the lot, conveying it to the State in 1861; a deed from the State to Griffin, in 1868; and a deed subsequently made in 1868, from Griffin to Mrs. Faler. The defendants here rested.

In rebuttal, the plaintiffs offered the following deed to the lot, to show a common source of title, and that the defendant, Mrs. Faler, would have acquired title at the administrator's sales, if the decrees had been valid: —

"This indenture, made and entered into this 23d April, 1859, between Wirt Adams and Sallie Adams, his wife, of the first part, and Thomas S. Morgan, of the second part, witnesseth, &c., . . . *do grant,* bargain, sell, alien and convey to the party of the second part, and his heirs, &c. . . . *To have and to hold* to the party of the second part, his heirs, &c. . . . In testimony whereof the parties of the first part have hereunto set their hands and seals," &c.

The defendants objected to the introduction of this deed, because Morgan died in 1858, before the date of the deed. The objection was sustained, and the plaintiffs excepted. The plaintiffs then put in evidence a deed from George H. Hazlehurst to Wirt Adams, dated March, 1858, and proffered proof of another administrator's sale by Haley, in 1866, at which Mrs. Faler had purchased the lot, which was excluded. The plaintiff moved to exclude the tax title, on the ground, among others, that the lot was assessed to Adams. The questions presented are: —

1. Whether the title in the Morgan heirs is such as would support the action of ejectment, the Adams deed being to a dead man.

2. Whether the tax title is available to the defendants as a defence, both parties claiming from a common source.

3. Whether the defendants can show that the title derived from a common source is an equitable title only.

4. Whether the Statute of Limitations of one year applies.

The court below, by instructions to the jury, answered the first question in the negative, and the three others in the affirmative.

From a verdict and judgment for the defendants, the plaintiffs bring the case to this court.

*H. B. Mayes*, for the plaintiffs in error, argued the case orally, and also filed a brief, which, at his request, is omitted.

*Potter & Green*, on the same side.

*M. Green*, on the same side, filed a brief, making the following points: —

1. The decree to sell lands in 1869 was void, because one heir is not made a party, nor was there publication as to him, nor any affidavit, in the petition, of the residence of the defendants, nor denial of knowledge thereof; nor is there any order to mail a copy of the order to the defendants who were nonresidents. *Hamilton* v. *Lockhart*, 41 Miss. 460; *Munday* v. *Calvert*, 40 Miss. 181; 42 Miss. 220; *Temple* v. *Hammock*, 52 Miss. 350; *Matlock* v. *Livingston*, 9 S. & M. 489; *Ingersoll* v. *Ingersoll*, 42 Miss. 155.

2. The decree of sale in 1872 was void, because it does not affirmatively appear that bond for application of proceeds of sale was given prior to sale, *Buckner* v. *Wood*, 45 Miss. 62; 44 Miss. 591; because the petition was to perfect title under previous decree and sale, and the jurisdiction of the court is special and limited to sales of lands to pay debts; and because of confederation of bidders. *Loyd* v. *Malone*, 23 Ill. 48; *Wooton* v. *Hinkle*, 20 Mo. 290.

3. The deed from Adams to "Morgan, and to his heirs and assigns," is valid on its face as a deed to Morgan in fee. When it is shown that Morgan was dead at its execution, by evidence *aliunde*, and it is also shown that the grantor knew the grantee was dead, but so made the deed and *delivered* it to the heirs, then the word "heirs," instead of being a word of *limitation*, becomes a word of *purchase*. Surrounding circumstances are admissible to show the person or thing meant in a deed. 12 Cal. 162; 26 Cal. 88; 15 Ill. 581; 3 Mass. 352; 53 Me.

356; 46 N. H. 83. In such case the manifest intention of the parties should govern.

4. Sect. 2173 of Code 1871, prescribing one year as the time within which suits can be brought to recover lands sold by administrators, &c., limits the ground of attack on such sales to the "*invalidity of such sales*." The idea is single, "invalidity of such sales," and this is the *only* ground of attack allowed. *Expressio unius, exclusio alterius.* It must be an "*invalidity*," and it must be in the "*sale*." As the clause is limiting, it is manifest that it cannot apply to any thing which is not a part of the *sale*. The word "*sale*" does not involve the idea of *decree*; nor can it be said to be a generic term covering both the *decree* and *sale proper*. An invalidity in the *sale* does not import an invalidity in the *decree*; the latter may be valid and the former invalid, yet *mutatis mutandis* it is not true. Hence this term, "invalidity of such sales," cannot be construed to mean invalidity in the decree.

This section cannot apply where the court had no jurisdiction of the parties, and where, in consequence, the decree is void. No one can be deprived of his property without due process of law, and this means the right to notice of suits against him. A decree without jurisdiction is *void*, and does not divest the title. How can it be, if the title is never divested by the decree, and a party purchases at the sale under this decree, of the existence of which the heir knows nothing, that the purchaser by keeping quiet can acquire an absolute title to the property because of the innocent lapse of one year? The statute does not require *possession* under the purchase. It does not suggest any thing save the sale to put the statute in motion; and as the sale is without notice, there is nothing to warn of the commencement of this absorption of title. The reason of the Statutes of Limitations is that a party will not be allowed to sleep on his rights, yet it was never intended by them that by concealment of the right the remedy will be barred. This would be the result were this statute construed as including want of jurisdiction, and hence the void decree under the "invalidity of such sale." By confining it to defects in the matters arising after the decree, it would work a righteous end; for then the heir has had his day in court, and

a divestiture of his title is had by the decree, and he cannot conscientiously complain.

It is contended, however, that where *possession* does not follow the sale, the statute does not apply, because by this the heir is notified of the motion of the statute. The statute does not express such exception; the language is sweeping. The court can engraft no exceptions on it. 29 Miss. 730; 12 S. & M. 663 ; 23 Miss. 571 ; 38 Miss. 503. This exception counsel allow to avoid an enormity; and the very attempt to make this exception before the statute can apply, proves that it was not intended to cover fatal defects in the decree. By applying it to invalidities in the sale only, no exceptions need be asked, for the divestiture of title of the heir by the decree is notice of the motion of the statute.

In *Brooks* v. *Richardson*, 52 Miss. 118, this court refused to apply this statute to a bill by the heir to cancel conveyances made by an administrator under a decree procured by fraud.

If the heirs are deprived of their property by the decree of a court, without notice to them or an opportunity to be heard, it will be injustice amounting to fraud.

5. This statute requires good faith in the seller and not in the purchaser ; hence a sale under a void decree, without notice to the heirs by the administrator, is a fraud of which he knew, and cannot be a sale in good faith. The defendants are not entitled to improvements. *Cole* v. *Johnson, ante,* 94.

*W. P. Harris,* for the defendants in error, made an oral argument.

*Harris & George,* on the same side, filed a brief, making the following points : —

1. The deed from Wirt Adams to Thomas S. Morgan is utterly void, because made to a person not *in esse,* and it can make no difference that the grantor knew that the grantee was dead, or that the grantor may be fairly presumed to have intended the deed to inure to the grantee's heirs. We cannot make out a deed by parol. The remedy of the heirs, if that intent existed, is to have the deed reformed or to have a new deed made, and it is sound judicial policy to remit the parties to a simple and cheap remedy for a mistake, rather than to break down established rules. *Eskridge* v. *Eskridge,*

51 Miss. 522; *Hunter* v. *Watson*, 12 Cal. 368, 376; *Ready* v. *Kearsley*, 14 Mich. 215, 225; 3 Washburn on Real Property, 237 *et seq.; Miller* v. *Chittenden*, 4 Iowa, 252; *Hagan* v. *Page*, 2 Wall. 607; 1 Sheppard's Touchstone, 54; *Jackson* v. *Phipps*, 12 Johns. 418; *Hulick* v. *Scovil*, 4 Ill. 191; 1 Johns. Cas. 114; *Hearn* v. *Cannon*, 4 Houst. 54; *Galloway* v. *Finley*, 12 Pet. 264.

2. In any case of a sale under an order of the Chancery Court in the course of administration, the limitation of one year applies, if the sale was fair and *bona fide*, and the purchase-money paid; and it is immaterial whether the objection to the sale arises from defect of jurisdiction as to parties, or from imperfect execution of the decree or order of sale. § 2173, Code 1871; Code 1857, pp. 402, 403, art. 29; Hutch. Code, 830, § 5; *Good* v. *Norley*, 28 Iowa, 188; *Purseley* v. *Hays*, 22 Iowa, 16; *Washburn* v. *Carmichael*, 28 Iowa, 475. In Wisconsin, the court applied the statute to irregularities preceding the sale, and held that the sale by the administrator was a disseisin of the heir. *Jones* v. *Billstein*, 28 Wis. 221; *Howard* v. *Moore*, 2 Mich. 226. The Massachusetts law was interpreted in 9 Cushing, 223; that of Indiana in 13 Ind. 105.

3. The rule as to a common source of title is simply this, that the plaintiff in ejectment need go no further in his proof, in the first instance, than the title of the person from whom both parties apparently claim. It is a *prima facie* case. The defendant, however, may show that he claims as well from other sources as from that, and he may, as against the plaintiff, show that the title in the common source was an equitable and not a legal title. *Smith* v. *Otley*, 26 Miss. 291; *Hughes* v. *Wilkinson*, 28 Miss. 600; *Wolf* v. *Donell*, 13 S. & M. 103. We call the attention of the court to Bigelow on Estoppel, 290, where the author states the doctrine clearly, as it rests on the best authority. These authorities are conclusive that it was competent to show that the defendant had acquired a title from Griffin, the purchaser from the State. If this title was valid in the State, then in a court of law, being in the defendant at the trial, it must prevail.

The outstanding title was in the State, and then in Griffin.

It is not outstanding since Mrs. Faler bought it.   She acquired the State's title.   That was valid, subsisting and operative.

4. § 2173, Code 1871, has never been construed.   In *Richardson* v. *Brooks* the bill charged fraud and collusion both as to the decree and sale, and the demurrer admitted it.   *Monday* v. *Calvert* was an appeal from the decree of the Probate Court, reversed for want of notice on error.   *Steen* v. *Steen* was a petition to compel an administrator to account.   25 Miss. 315 ; 40 Miss. 181 ; 41 Miss. 479 ; 42 Miss. 210.   We call attention to the confusion which has prevailed, as illustrated in the foregoing cases, in regard to grounds for reversing a decree, and those on which it may be treated as absolutely void.   " Sales made fairly and in good faith " refers to fair dealing as such, and not to that technical *bona fides* which a mere constructive notice repels.   The application of the rule which affects purchasers constructively with notice of irregularities in a probate sale would leave nothing on which the statute could operate.

SIMRALL, C. J., delivered the opinion of the court.

These several questions arise on the record, and have been argued by counsel : —

1. Have the plaintiffs in ejectment shown such title to the premises in question as will maintain their action ?

2. Are the defendants, who claim by purchase at probate sale made by the administrator of Thomas S. Morgan, deceased, precluded to deny the legal title of the intestate, where the plaintiffs claim as his heirs ?

3. Where both parties claim title from a common source, is the defendant estopped from getting in an outstanding title, and setting it up, to fortify his right and protect his possession ?

4. Does the Statute of Limitations of one year apply to this case ?

The plaintiffs, heirs of Thomas S. Morgan, deceased, assume that both parties deraign title from him, and insist that the defendant, Mrs. Faler, and the others who hold under her, having bought the property at administrator's sale, are estopped to controvert that title ; and that therefore the only

question that can be legitimately contested is, whether the title of the intestate Thomas S. Morgan has devolved on the plaintiffs by inheritance, or upon the defendants by the probate sale. To appreciate the merits of this proposition, it is necessary to state the history and character of the title. It is conceded that one Hazlehurst many years ago was owner in fee-simple, and that he conveyed the property to Wirt Adams. Adams bargained a larger area of land to Thomas S. Morgan, and gave bond to make the deed on payment of the money. Morgan paid half of it in his lifetime. Haley, his administrator, found among the papers this bond. He paid to Adams the balance of the purchase-money, returned to him the bond, and received a deed from Adams and wife, conveying the property to Thomas S. Morgan and his heirs. *In the premises* Adams and wife are stated to be parties of the first part, and Thomas S. Morgan party of the second part. *The grant* is to " Morgan and his heirs," and *the habendum* is to " Morgan, his heirs."

In the Circuit Court it was contended, and the argument has been renewed in this court by the defendants, that this deed is an absolute nullity, because the grantee was not *in esse*, or rather because there was no grantee to whom delivery could be made, and who could accept. It is common learning that in every deed there must be a grantor and grantee, and a thing granted. To make the instrument operative, there must be delivery by the grantor and acceptance by the grantee. The delivery is the final and complete act; but there can be no delivery without an acceptance. Delivery may be made to the grantee, or to some person by him appointed to receive it. *Jackson* v. *Richards*, 2 Cow. 617 ; 4 Cruise Digest (1st Am. ed.), 28 ; Sheppard's Touchstone, 57. It is sufficient to say that, when a present estate is raised to vest immediately, it is essential that the deed having the requisite formula shall go from the control of the grantor in such sense as that there has been a delivery to or acceptance by the grantee, or the occurrence of those things which imply delivery and acceptance. A deed is a contract, and in the nature of things there must be parties capable of assenting to its terms.

In *Hunter* v. *Watson*, 12 Cal. 363, 376, it was assumed by the court that the deed to Knox, having been made after his death, must be laid out of the question as a nullity. Though made to Knox *and* his heirs, " heir " was not a word of purchase to carry the estate, but a limitation defining and qualifying the title. That principle is laid down without restriction in 2 Washburn on Real Prop. 239. In *Jackson* v. *Phipps*, 12 Johns. 418, the understanding was that Joseph should give to Aaron Phipps a mortgage. Joseph signed, sealed and acknowledged the instrument; but Aaron having died before there had been a delivery to and acceptance by him, or any person for him, it was held inoperative, although the son and heir accepted it afterwards. *Jackson* v. *Dunlap*, 1 Johns. Cas. 114, is in principle and some of its features like this case. The deed was fully executed with a subscribing witness; but it was agreed that the grantor should retain the deed until the consideration money should be fully paid, " and Wareham, the grantee, said he would not take it until the money was paid." In this state of affairs the grantee died. The title failed to pass, because there had been no delivery. Kent, J., thought there was an equitable lien, but that it could not be set up at law as a legal estate.

There must be a real grantee. A deed to a fictitious person is void. *Muskingum Turnpike* v. *Ward*, 13 Ohio, 120. A deed to A. or B. is void for uncertainty; the grantor not having expressed his intent, it is impossible to determine which shall take. Bacon Abr. " Grant," C. But a deed to A. *or* his heirs is good; for the intent is plain that the title shall vest in A. if living, and if not, then in his heirs or devisees. *Ready* v. *Kearsley*, 14 Mich. 215, 225.

For many years it has been the practice of the authorities of the United States to issue patent certificates and patents to the original grantees or " their legal representatives." It was adopted in order to avoid the confusion and embarrassment that would ensue, if the certificate or patent was in the name of the original party, and he should have died or assigned his right before the date of the patent; that instrument generally being sent out several years after the initiatory right accrued. It has been held by the Supreme Court that such patent vests

title in the original grantee, or in those who succeed to his title, by operation of law, as the heir or devisee, or by contract, as an assignee. *Hogan* v. *Payne*, 2 Wall. 605.

We are of the opinion that the deed is invalid, for the reason indicated, unless, as said by the counsel for the plaintiffs below, also the plaintiffs in error, it is relieved from that fate by two considerations. The first is that, in order to prevent " justice from being entangled in a web," and for the purposes of justice, the deed will be made to relate back to the date of the agreement to convey. We may not have a distinct conception of the argument of counsel. We have been able to examine but one authority referred to in illustration of the rule contended for, viz., *Johnson* v. *Stagg*, 2 Johns. 510, 520. The observation is, " a conveyance will in many cases be deemed to relate back to the time when the agreement for it was concluded, and render valid any intermediate disposition of the land." The facts to which the remark applied were that Sheldon and Murray had made their agreement for the new lease prior to the 6th of May, and that the mortgage to Stagg, which was by way of lease for twenty years, was made and accepted upon the strength of that new agreement. If this was the real truth, the mortgage would, as against Sheldon, include the interest conveyed by the lease of the 1st of August. The case was that of a debtor who had an agreement for a lease of twenty years, and mortgaged the property. Although the lease was not executed until afterwards, yet the mortgage shall take effect upon it. If A., who has an agreement to buy lands, conveys in fee to B., and afterwards takes the deed to himself, this title would inure to the benefit of the vendee. The case cited would support the right of B. on the idea of relation back to the date of the agreement. Perhaps the better reason would be that A. was under an estoppel as to his vendee.

We are not prepared to accept the doctrine as presented by counsel. We concur in the principle that, where the title of the grantee is made up of several components, as successive parts, relation may be adopted to protect it against acts done or suffered by the person from whom it is derived ; as the

purchaser under a judgment or foreclosure decree may refer back to the lien of the judgment or mortgage, so as to protect his deed against incumbrances, put on the land subsequent to the accrual of the lien and before the date of the sale and deed. In such cases the purchaser may rely upon the right of the judgment creditor and the mortgagee as parts of his title for the purposes stated.    But we do not believe that a deed to a dead man can have vitality by making it relate back to an agreement to purchase, and take effect as from that day.    A deed may, as in the illustrations just given, have relation back to the date of the agreement, so as to give a preference to the title to one acquired from the vendor after the agreement.

The second consideration urged by counsel is, that Thomas S. Morgan being the common source of title, the defendants were estopped to deny that the legal estate was in him.

The general rule is that a defendant may rely upon his possession, or he may set up an outstanding title in a stranger, with which he has no connection.    The plaintiff must show a right of entry.    If the defendant shall be able to present in evidence a subsisting legal title in a third person, upon which a recovery could be had in ejectment, then he shows that the plaintiff has not such an estate as gives him the right of entry.

But there are exceptions to this rule, which are grounded in reason, and are quite as well established as the rule itself.    A conveyance in fee is an absolute extinguishment of the grantor's title at law and in equity.    The vendee, having acquired the property by the sale, may fortify his right and protect his possession by the purchase of an outstanding title. *Averill* v. *Wilson*, 4 Barb. 180.    There is no estoppel on the vendee, unless he is under an obligation, express or implied, that at some time or in some event he will surrender the possession; as where the possession is taken under an executory contract of purchase, or the relation of tenancy exists.    *Osterhant* v. *Shoemaker*, 5 Pet. 518; *Blight* v. *Rochester*, 7 Wheat. 535.    The vendee enters and holds possession for himself and not for his vendor. *Watkins* v. *Holman*, 16 Pet. 25, 54; *Propagation Society* v. *Pawlet*, 4 Pet. 480, 506.    The vendee with covenants of war-

ranty is not thereby hindered from acquiring a better title. But as to the vendor, if not technically estopped from getting in and asserting a paramount title against him, "his warranty interposes and bars or rebuts him and his heirs of a future title not in him at the time of his conveyance." Co. Litt. 265 *a* ; *Jackson* v. *M'Crackin*, 14 Johns. 193 ; *Jackson* v. *Bradford*, 4 Wend. 619, 622. A defendant in possession, where the plaintiff is a purchaser under execution and judgment, cannot set up a title in a stranger; and that principle is founded in justice and policy. *Jackson* v. *Bush*, 10 Johns. 223 ; *Jackson* v. *Hinman*, 10 Johns. 292 ; *Watkins* v. *Holman*, *ubi supra.* Another exception to the rule is, that where both deraign from a common source, the defendant cannot set up an outstanding title with which *he has no connection;* but if he has obtained that title, no reason is perceived why he may not set it up. *Wade* v. *Thompson*, 52 Miss. 367. In such contestations, generally, the only question is, which has the eldest derivation. Both parties, by purchasing the same title, admit that it is good ; but it is open to either party to show whether in the common source it was legal or equitable. If in truth Thomas S. Morgan had at the time of his death but an equitable estate, the sale by his administrator could pass no greater or better estate to the purchaser. If the sale was void, his heirs succeeded to the same estate.

When the plaintiff has shown that the defendant deraigns title back to the same person under whom he claims, he is not required to go further, and show that such title is good against all opposers. He has made out a *prima facie* case. Both parties have acted on the assumption that the title is good; and the question is, which holds the title, or which has the oldest derivation. The defendant is under estoppel no further than that he shall not be permitted to prove a paramount title in a stranger with which "he shows no connection." *Griffin* v. *Sheffield*, 38 Miss. 359, 391 ; *Paul* v. *Ward*, 4 Dev. 247 ; *Love* v. *Gates*, 4 Dev. & Bat. 363, 444. If, however, he has acquired that title, he has done no wrong to the plaintiff, has violated no trust, and has broken no allegiance. *Wade* v. *Thompson*, 52 Miss. 367. But has any court pushed the doc-

trine to the extent of denying to the defendant the right to show the character of the title in the common source, whether of a term for years, or whether it was legal or equitable? That proof does not deny the title, but discloses precisely what it was.

The question remains, to whom has the title, such as it is, been transmitted? We have seen that Thomas S. Morgan, at the time of his death, had but an equitable estate in fee. That estate descended, and remained in his heirs, unless divested by the probate sale. If Mrs. Faler acquired it by her purchase, she got but an equitable estate; if the title did not pass, it was in the heirs as an equitable right. The administrator may sell the real property, whether the title be legal or equitable. His deed operates as an assignment to the vendee; an assignment, too, without recourse: and he can only perfect his right into a legal title by the voluntary conveyance of the heirs, or through a court of equity. Mrs. Faler acquired no better right than would the assignee of Morgan in his lifetime of Adams's bond.

Counsel in their arguments bestowed much attention on the very important question arising under the first clause of § 2173 of the Code.

The manifest purpose of the statute was remedial. It is framed on the idea of giving repose and confidence to titles derived from probate sales made prior to the 1st of October, 1871, and to the same kind of sales made by executors, administrators and guardians subsequently by the Chancery Court. The evil was, that, because of the negligence and carelessness which experience had shown marked the history of the Probate Court, it was almost the exception to conform to the statutory directions, in the exercise of that special and limited jurisdiction for the sale of the real estate of decedents by their personal representatives, and of minors by their guardians; and under the decisions applicable to that sort of jurisdiction the titles of the purchasers were invalid. Persons who had in good faith paid their money, years afterwards lost their lands, and the heirs recovered the property oftentimes disincumbered of debts.

The statute proposed to cure the evil by applying a short

limitation where the sale was free from fraud, and the purchaser in good faith had paid his money; so that if the purchaser lost his land, he might indemnify himself in some mode or other. The heir, or other person claiming derivatively from the decedent, if he relies on the invalidity of the sale as the ground of recovery, must bring his action to recover the property within one year after the statute of 1871 went into effect (1st October, 1871), when the sale had theretofore been made, provided the sale was fair and *bona fide*, and the purchase-money has been paid. If the sale be not of that character, or the purchase-money has not been paid, then the action is governed by the general Statute of Limitations. The language of the section is, " no *action* shall be brought to recover property heretofore sold," &c. Technically, *action* has a more restricted meaning than *suit*, and refers to suits in courts of law, while the latter term includes judicial proceedings in both courts of law and equity.

A close analysis of the language will help to disclose the legislative intent. The bar of one year attaches to the *action* brought to recover the *property* sold. The action is that judicial proceeding by which the claimant on the ground " of the invalidity of the sale " seeks to recover it. The legislative mind had especially in view the common-law actions of ejectment, detinue and replevin; but it must also have intended to apply the bar to a suit in chancery, where the claimant had but an equitable title. It is also plain that the parties who bring the *action* must claim to have the title of the decedent by devolution, as his heir, which title, as is claimed, was not divested by the sale of the administrator. The statute, in effect, says to such claimants, " You shall not recover the property " on the ground of the invalidity of the sale, if, in fact, it was made in good faith and the purchase-money has been paid, unless you bring suit within one year from the 1st of October, 1871, if the sale has been made before that time."

The first legislation we have on this subject is the fifth section of the Statute of Limitations of 1844 (Hutch. Code, p. 831), which may help to interpret the existing law. That statute was confined to real estate. It limited the *right of entry* of the heir of the decedent to three years, where the sale

by the administrator, &c., had been theretofore made, and to five years, where the sales were made afterwards, provided they were in good faith, and the money has been paid. It will be noted that the present law is, " no action shall be brought; " that of 1844, " no entry shall be made ; " and the right shall be cut off, unless within three years, &c. Both statutes clearly mean that there must be a person against whom the action may be brought. It is impossible to suppose that the statute of 1871 intended to cut off the right of the heir to the land, unless there was some person in *possession* against whom he might bring the action.

If the land which has been sold be wild and unoccupied, and so continues for years after the sale, how can the heir sue, and who would he make defendant ? The legal seisin is always esteemed to be in the true owner, unless he has been disseised, and there is an actual adverse holding. The deed of the " real owner," by operation of law, passes the seisin to the grantee without livery. If a sale of wild and unoccupied land, by the administrator, is void for any reason, so that the title which was in the intestate does not pass, then the heir, the true owner, continues to have the technical seisin, and he could maintain trespass *quare clausum fregit* against any one who broke and entered his .close. In such a case, the heir would not lose his right of action, until the vendee of the administrator entered, or asserted such ownership as amounted to a disseisin. It would be meaningless, under the act of 1844, to say that the heir shall lose his right of entry in three years, when, during that time, nobody was opposing his right and holding him out, no one being in possession against whom he could assert it by suit. So, under the present law, it is futile to say that he must bring his action within a year, when there was no disseisor in possession against whom he could bring it. Statutes of limitations assume that the claimant has a right of action which he forbears to assert, and may lose if he does not sue in time ; but how sue, when no one is in adverse possession to him ? This was the view of the Supreme Court of Wisconsin of a statute not differing from ours. It was, " No action for the recovery of any estate sold by an executor or

administrator . . . shall be maintained by any heir, . . . unless it be commenced within five years next after the sale." In the case of *Jones* v. *Billstein*, 28 Wis. 221, 228, it was held that the right of action accrued when the vendee went into possession.

We are construing the statute as it affects sales made prior to its passage. Mrs. Faler bought in 1869, paid the money, and was in possession more than a year prior to Oct. 1, 1871. The statute applies the limitation, on the assumption that the vendee, or some one under him, was in possession when the statute went into force, and intends to apply the bar within a year thereafter. If no one was in possession against whom the action could be brought, then it would take effect after possession began. Mrs. Faler, having been in possession for more than a year after 1st of October, 1871, before suit brought, can claim the benefit of the bar, unless the further position taken by counsel be true, that the statute does not apply if the sale be void, for some defect which makes the decree a nullity, such as want of notice to the heirs. It is said the invalidity meant is some irregularity occurring after decree. If the court had jurisdiction of the subject-matter and parties, the decree of sale is valid, and the sale itself would stand on the same footing as other judicial sales, and could not be impeached collaterally for mere irregularities.

The statute is remedial and curative, has its origin in that policy, and, if the words will admit of it, should receive that construction which will accomplish the end aimed at. It was meant to cure all defects in the sale, no matter from what cause, whether before or after decree, unless the heir brought his action within the time, to contest and show its invalidity. The vendee enters, claiming under the judicial proceedings and the administrator's deed. Though the sale be void, he is in under color and claim of title, and the statute does no more than to protect and perfect his imperfect right, after the expiration of a year from the time the right to bring suit arose.

We are supported in this interpretation of the statute by decisions in other States on similar laws. *Holmes* v. *Beal*, 9 Cushing, 223; *Vancleave* v. *Milliken*, 13 Ind. 105; *Knox* v.

*Cleveland*, 13 Wis. 245; *Good* v. *Norley*, 28 Iowa, 188, 206, *per* Dillon, C. J.

Fairness and good faith in the sale means that fair dealing which usually characterizes business transactions. They are used as the antithesis of *mala fides*. The purchaser must bid on the property, and pay his money, on the faith and confidence that the sale will pass the title which the decedent had. If he knows that the judicial proceedings are fatally defective, or that the administrator has not conformed to the law and the directions of the decree; if he has made an unfair and fraudulent combination to buy the property, at the expense or the prejudice of the heir, — then the sale has not been made *bona fide*. The words are used in their common and popular acceptation, and not in a technical sense. They are used as in the statute allowing compensation for permanent improvements, as explained in *Cole* v. *Johnson, ante*, 94.

The case has been ably and elaborately argued by counsel on all the questions we have considered. We have felt it our duty to announce an opinion on each of them, to show that the plaintiffs in error could not succeed if they had sued in chancery on their equitable title, since a court of law recognizes only legal titles.          *Judgment affirmed.*