[Wilkinson *et al.* v. King.]

# Wilkinson *et al. v.* King.

### *Trover for Conversion of a Horse.*

1. *Variance.*—In trover for the conversion of a gray horse, the plaintiff can not recover on proof of the conversion of a mouse-colored mule; and a charge in his favor will work a reversal of the judgment, although both animals were conveyed by the same mortgage, and the variance was not called to the attention of the trial court.

2. *Registration of mortgage; removal of property to another county.*—When a mortgage of personal property has been duly recorded in the county where the property is at the time of its execution, a removal of the property to another county, does not render it necessary to have the mortgage recorded in the latter county, and in a third county, where it is removed from the second county inside of six months to a third county, and does not remain in the third county six months, but the sum of the times it remains in the second and third counties exceeds six months.—(Code, §§ 2162, 2170).

APPEAL from Circuit Court of Crenshaw.
Tried before the Hon. JNO. P. HUBBARD.

The opinion states the facts.

J. F. STALLINGS, for appellant.

GAMBLE & RICHARDSON, *contra.*

STONE, C. J.—In the early part of the year, 1883, J. W. & J. R. Tisdale executed to W. W. Wilkinson, a promissory note for two hundred dollars, due September 15, then next. They also executed to him a mortgage with power of sale, to secure said note " and all other amounts which the [grantors] may be due the said Wilkinson by account or otherwise." Among other things, the mortgage conveyed " one gray horse, ten years old, Charley," and " one mouse colored mare mule, named Julia." The Tisdales, makers of the mortgage, resided in Crenshaw county, and had the property therein. The mortgage, after being properly probated, was duly recorded in that county in May, 1883. The mule remained in Crenshaw county until September 20, 1884, when one Stribling obtained possession of it by purchase or exchange, and carried it to Pike county, where he resided. Stribling retained the mule in his possession in Pike county until about November 1, 1884, when he traded it to King,

the plaintiff in this action, who also resided in Pike county. King retained the mule until December 26, 1884, when he made an executory agreement of sale of the mule with one Hall, but retained the title in himself. . Hall carried the mule to Coffee county, where he resided, and retained it there until March 24, 1885, when Wilkinson, through his agent, took possession of the mule, and sold it under his mortgage. It is shown that neither Hall nor King had actual notice of Wilkinson's mortgage, and each of them was a purchaser for value. Wilkinson's mortgage was never recorded either in Pike or Coffee county.

On the trial in the Circuit Court the presiding judge, at the instance of plaintiff King, gave to the jury the written charge : "·That if the jury believe from the evidence that Hall, King and Stribling together had the mule in Pike and Coffee counties, Ala.," claiming it as their own for a longer period than six months from the time it was taken out of Crenshaw to the time it was taken by defendants, and they further believe that Wilkinson did not have his mortgage recorded in said counties, then the jury must find for the plaintiff." There was exception to this charge.

There is a question of variance in this case, which appears to have escaped observation in the court below. ·It is due to the presiding judge that we should state that it does not appear to have been called to his attention. The action is trover, not for the conversion of the mule "Julia," but of "one gray horse, Charlie." All the testimony in the cause—and it purports to be all set out—shows that the mule was the subject of contention. It was the mule that went into the possession of Stribling, then of King, and finally of Hall ; while the record is silent as to what became of the "gray horse, Charlie." There is not a semblance of proof that King had any claim to him, or that Wilkinson ever had possession of him. To authorize recovery, the averments and proof must correspond in substance. Hence, no matter how fully King may have proven his right to recover for the mule described in the testimony, he could not recover under the complaint found in this record.

The judgment of the Circuit Court must be reversed.

Does the plaintiff show a right to recover as to the mule?

The theory on which the right of recovery in this action is claimed, is that before Wilkinson took possession of the mule under his mortgage, it had been removed from the county of Crenshaw, in which the mortgage was recorded, and had remained out of the county for more than six months, viz: six months and four days. This claim is rested on our registration statutes. Two sections of the

Code bear on this question, and they must be construed *in pari materia.*

§ 2162. " Conveyances of personal property to secure debts, or to provide indemnity, must be recorded in the county in which the grantor resides, and also in the county where the property is at the date of the conveyance ; and if before the lien is satisfied the property is removed to another county, the conveyance must be again recorded within six months of such removal, in the county to which it is removed."

§ 2170. " Conveyances of personal property to secure debts, or to provide indemnity, are inoperative against creditors and purchasers without notice, until recorded, unless the property is brought into this State subject to such incumbrances, in which case four months are allowed for the registration of the conveyance; and if such property is removed to a different county from that in which the grantor resides, the conveyance must be recorded in such county within six months from the removal, or it ceases to have effect after such six months, against the creditors or purchasers of the grantor without notice."

The object of the statutes of registration is protection to creditors and purchasers against conveyances and loans, of which possession furnishes no evidence. It is a substitute for notice, because it affords to outsiders a simple and easy method of finding out whether there is a conveyance or incumbrance on property which they propose to purchase, or, on the faith of which they propose to extend credit. It and actual notice are the equivalents of each other, for where one exists, the other is not required.—Walker Amer. Law, 7th ed. 404-5 ; 4 Wait Ac. & Def. 588 ; *Grimstone v. Carter,* 3 Paige, 421; s. c. 24 Amer. Dec. 230 ; *Shepherd v. Burkhalter,* 58 Amer. Dec. 523 ; *Frost v. Beckman,* 1 Johns. Ch. 288; *Johnson v. Stagg,* 2 Johns. 510, 522.

Article 3, chapter 1, title 3, part 2, of the Code of 1876, declares the duty and mode of probating and recording conveyances. § 2162 is found in that article. The next succeeding article contains § 2170, and declares the purpose of registration, " protection to purchasers and creditors against dormant conveyances and loans." § 2170 consists of three clauses, each devoted to a separate subject. Being intended to give notice, and thereby to protect creditors and purchasers, a pertinent inquiry arises, was it past, or prospective creditors and purchasers the act of registration was designed to protect? We need not decide this question.

We hold that to come within the statute which requires re-registration, the property must not only be removed to

[East Tenn., Va. & Ga. R. R. Co. v. Cary.]

another county, but must remain in such other county for six months, before the mortgage and its first registration lose their effect. To hold otherwise would be to require registration in a dozen counties, if the property was removed into so many during the six months.

Reversed and remanded.